NOT FOR PUBLICATION

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

—————————————————————
                               :

ASSOCIATION OF NEW JERSEY      :
CHIROPRACTORS, et al., individually and :
on behalf of all others similar situated    :
                               :

           Plaintiffs,            :          Civil Action No. 09-3761 (JAP)
                               :
          v.                    :
                               :
AETNA, INC.,                     :
 et al.                         :          **OPINION**
                               :
                               :
           Defendants.         :
—————————————————————:

PISANO, District Judge

      Presently before the Court is a motion by Plaintiffs/Counterclaim Defendants Donna Restivo, Todd Carnucci, Mark Vincent, Jeffrey Shirley, and Vicky Yarns (collectively, the "Providers") to dismiss Defendants'/Counterclaim Plaintiffs' (collectively, "Aetna") counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6).  Also before the Court is an appeal of from a decision of the Magistrate Judge denying a motion by plaintiffs (collectively, "Plaintiffs") to file a second amended complaint.  For the reasons below, the Court denies the Providers' motion to dismiss, and affirms the decision of the Magistrate Judge.

## I.  Motion to Dismiss

### A.  Background[1]

Aetna is an insurer that offers commercial healthcare plans through which healthcare expenses incurred by insureds for services covered by the plans are reimbursed by Aetna pursuant to the terms of the relevant plan.  The majority of states, including New Jersey, New York, and Texas (the states where the Providers are from), require insurers such as Aetna to adopt comprehensive anti-fraud plans to identify and investigate insurance fraud.  Pursuant to this mandate, Aetna maintains a Special Investigations Unit ("SIU") to detect, investigate, and prevent false and fraudulent claims by healthcare providers and members.  One method used by insurers to detect, investigate and prevent fraud is through post-payment reviews of claims submitted by healthcare providers.

The Providers are medical professionals who have provided healthcare services to patients insured by Aetna.  When submitting claims for payment to Aetna, healthcare service providers such as the Providers use standard billing forms.  These standard billing forms use numeric codes to describe the medical services for which the provider seeks payment.  Federal regulations, specifically 45 C.F.R. § 162.1002(a)(5), (b)(1), designate the American Medical Association's Current Procedural Terminology ("CPT") and the Centers for Medicare & Medicaid Services Common Procedure Coding System ("HCPCS") as the standard codes to be used for physician services and other health care services.  In the process of adjudicating claims, Aetna relies on the CPT code to accurately identify the nature and scope of the services

---

[1] The facts recited herein are based upon Aetna's counterclaim and are accepted as true for the purposes of this motion.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008) (In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.")

provided, and based on the representations in the claim form, determines whether the particular CPT code is covered under the applicable health benefit plan.

Many CPT codes are ranged so as to describe services of increasing complexity or that consume an increasing amount of the provider's time, such that the higher number code reflects a procedure for which the provider would be compensated at a higher rate than the lower-numbered code.  Billing for a higher CPT procedure than the service actually performed is a fraudulent practice known as "upcoding."  Also, many CPT codes describe services which are part of or included in services described by other, more inclusive CPT codes.  Billing for services by using the separate codes for each of the included services, when the services are more accurately described under a single, "inclusive" code, to increase reimbursement is a fraudulent practice known as "unbundling."

Another type of fraudulent billing occurs when a healthcare provider waives certain payments that, under a benefit plan, are the responsibility of the patient.  Aetna healthcare benefit plans generally require Aetna members to pay deductibles and a portion of each medical bill, known as coinsurance or copayments.  According to Aetna, by requiring some out-of-pocket investment by members in their health care, members are incentivized to be vigilant about whether the treatment they are receiving is necessary, effective and actually rendered.  When a provider agrees to waive these payments, this incentive is lost and the overutilization of unnecessary and expensive services is encouraged.   Furthermore, the waiver of such amounts also misrepresents the true amount of the provider's actual bill, and when it is not disclosed to Aetna, constitutes fraudulent billing.

The counterclaims at issue in the present case involve several healthcare providers, each of whom were investigated by Aetna's SIU.  As a result of the investigations, Aetna concluded

3

that each of the Providers had misrepresented their services and over-billed Aetna.  Aetna

requested that the Providers repay Aetna for the overpayments.  In response, the Providers filed

the instant lawsuit.  Aetna, in responding to the Providers' suit, has asserted the following

counterclaims:

Aetna has asserted counterclaims against Donna Restivo, D.C., a New York chiropractor,

for common law fraud, negligent misrepresentation, and unjust enrichment based on allegations

that Restivo: (a) unbundled codes for both manual therapy and chiropractic manipulation in the

same region; (b) repeatedly upcoded chiropractic manipulations of the spine; and (c) miscoded or

otherwise concealed services considered experimental and investigational so that payments

would be issued, including for use of a spinal decompression table billed as mechanical traction

and for use of a dry aqua massage device billed as whirlpool treatment.

Aetna has asserted counterclaims against Todd Carnucci, a New Jersey chiropractor, for

violation of the New Jersey Insurance Fraud Prevention Act, N.J.S.A. § 17:33A-1 to -30

("NJIFPA"), negligent misrepresentation, and unjust enrichment based on allegations that

Carnucci: (a) falsely billed more than 11 different CPT codes for services not rendered; (b)

repeatedly upcoded chiropractic manipulations of the spine; (c) unbundled codes for both manual

therapy and chiropractic manipulation in the same region; (d) falsely billed neurodiagnostic

testing codes for tests not documented at all or without proper findings to warrant the tests; (e)

practiced outside the scope of his license when billing physical therapy codes where no

chiropractic manipulation was performed; (f) repeatedly failed to have proper documentary

support for claims billed under more than 8 different CPT codes, including notations describing

the treatment performed, body region, and time involved and findings indicating the need for

treatment; and (g) miscoded or otherwise concealed services considered experimental and investigational so that payments would be issued.

Aetna has asserted counterclaims against Mark Vincent, D.C., a New York chiropractor, for common law fraud, negligent misrepresentation, and unjust enrichment based on allegations that Vincent: (a) unbundled codes for both manual therapy and chiropractic manipulation in the same region; and (b) miscoded or otherwise concealed services considered experimental and investigational so that payments would be issued.

Aetna has asserted counterclaims against Jeffrey Shirley, D.C., a Texas chiropractor, for common law fraud, negligent misrepresentation, unjust enrichment, and breach of contract based on allegations that Shirley: (a) falsely billed for numerous chiropractic services that he did not provide, including adjustments where patients only received massages; (b) falsified diagnoses and treatment notes submitted in support of claims for benefits; (c) upcoded services rendered for office visits and chiropractic manipulations to receive greater payment; (d) billed for the treatment of conditions and provision of services beyond the scope of his license and that were not medically necessary, (e) paid kickbacks to patients for referring others for care; (f) waived patient responsibility and misrepresented the true cost of services provided; (g) fabricated patient records in response to Aetna's investigation; (h) tampered with witnesses asked to complete verification letters; (i) billed for services rendered by unlicensed and unsupervised support personnel; (j) offered improper financial inducements to new patients; (k) billed for therapeutic activities not documented in the contemporaneous treatment records; (l) unbundled codes for both manual therapy and chiropractic manipulation in the same region; and (m) miscoded or otherwise concealed services considered experimental and investigational so that payments would be issued.

Aetna has asserted counterclaims against Vicky Yarns, D.C., a Georgia chiropractor, for common law fraud, negligent misrepresentation, unjust enrichment, and breach of contract based on allegations that Yarns: (a) unbundled codes for both manual therapy and chiropractic manipulation in the same region; (b) unbundled codes for both trigger point therapy and therapeutic exercises using exercise in the same region; (c) misrepresented trigger point therapy as therapeutic activities rather than manual therapy; (d) misrepresented the use of a certain type of table as therapeutic activities; (e) misrepresented massages rendered by therapists as therapeutic activities personally rendered by her; and (f) misrepresented stretches performed by patients at her instruction as direct one-on-one therapeutic procedures.

The Providers have moved to dismiss Aetna's counterclaims, arguing that the claims are preempted by ERISA and further argues that, if not preempted, dismissal is warranted because the claims are neither plausible nor pled with sufficient particularity.

B.  Analysis

1.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted.  The Supreme Court explained the standard for addressing a motion to dismiss under Rule 12(b)(6) in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  The *Twombly* Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  *Id.* at 555 (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to

dismiss does not require courts to accept as true "unsupported conclusions and unwarranted

inferences" or "legal conclusion[s] couched as factual allegation[s]." (internal quotation marks

omitted)).  Therefore, for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the

"[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on

the assumption that all the allegations in the complaint are true (even if doubtful in fact) ..."

*Twombly*, 550 U.S. at 555 (internal citations and footnote omitted).

The Supreme Court has emphasized that, when assessing the sufficiency of a civil

complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662,

678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  When evaluating a motion to dismiss for

failure to state a claim, district courts conduct a three-part analysis.

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a
> claim."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1947 (2009).  Second, the court should
> identify allegations that, "because they are no more than conclusions, are not
> entitled to the assumption of truth." *Id.* at 1950.  Third, "whe[n] there are well-
> pleaded factual allegations, a court should assume their veracity and then
> determine whether they plausibly give rise to an entitlement for relief."  *Id.* This
> means that our inquiry is normally broken into three parts: (1) identifying the
> elements of the claim, (2) reviewing the complaint to strike conclusory
> allegations, and then (3) looking at the well-pleaded components of the complaint
> and evaluating whether all of the elements identified in part one of the inquiry are
> sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  A complaint will be dismissed unless it

"contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  This "plausibility"

determination will be "a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense." *Fowler*, 578 F.3d at 211 (citations omitted).  "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully;" mere consistency with liability is insufficient. *Iqbal*, 556 U.S. at 678.  A plaintiff may not required to plead every element of a prima facie case, but he must at least make "allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element."  *Fowler*, 578 F.3d at 213 (3d Cir.2009).

2.  ERISA Preemption

In the ERISA context there are two types of preemption that may arise -- "complete" preemption under § 502(a), codified at 29 U.S.C. § 1132(a), and "express" preemption under § 514, codified at 29 U.S.C. 1441.  *See, e.g., Levine v. United Healthcare Corp,* 402 F.3d 156, 162 n.8 (3d Cir. 2005); *Pascack Valley Hospital, Inc. V. Local 464A UFCW Welfare Reimbursement Plan,* 388 F.3d 393, 398 n.4 (3d Cir. 2004).  As discussed in more detail below, the Court finds that neither type of preemption bars Aetna's counterclaims here.  Indeed, as the court in *Horizon Blue Cross Blue Shield of New Jersey v. Transitions Recovery*, 2011 WL 2413173 (D.N.J. June 10, 2011) recently explained, preventing an insurer from recovering from a provider for that provider's fraudulent or negligent misrepresentations would be at odds with the very purpose of ERISA:

> [T]he only way that Plaintiff can recoup the money it lost due to Defendant's allegedly fraudulent behavior is to pursue a remedy under state law.  A finding by this Court that ERISA preempts all of Plaintiff's state law claims would effectively deny Plaintiff any form of relief for the $8 million it paid to Defendant as a result of Defendant's allegedly fraudulent conduct.  Allowing a health care provider to make fraudulent statements to a plan administrator in order to collect unauthorized payments under an ERISA plan is clearly at odds with the Congressional purpose of "protect[ing] ... the interests of participant benefit plans."  Thus, the legislative purpose of ERISA supports a finding that ERISA does not preempt Plaintiff's state law claims.

*Transitions Recovery*, 2011 WL 2413173 at *9 (citations omitted).  The Court addresses each type of preemption below.

a.  Complete Preemption

Relying primarily on case law outside of this circuit, the Providers assert that Aetna's claims are completely preempted by ERISA.  Complete preemption occurs when "Congress … so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character."  *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (finding removal proper because ERISA completely preempts state law contract and tort claims arising from termination of disability benefits under ERISA plan).  The Third Circuit articulated the test to determine whether state law claims are completely preempted by ERISA in *Pascack Valley Hosp., Inc. v. Local 464A UFW Welfare Reimbursement Plan*, 388 F.3d 393 (3d Cir. 2004).  Under the applicable two-part test, state laws are completely preempted by Section 502(a) of ERISA when: (1) the plaintiff could have originally brought the claim under Section 502; and (2) "no other legal duty supports [the] claim."  *Id.* at 400.  Aetna argues that under this test, its claims are not preempted.

As to the first prong, a civil action may be brought under Section 502(a)(3) only by a participant, beneficiary, or fiduciary seeking to "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan" 29 U.S.C. § 1132(a)(3).  Aetna here is clearly neither a participant nor beneficiaries.  Consequently, for § 502 to applicable, Aetna must be a fiduciary.  Plaintiff argues that Aetna here is acting as a plan fiduciary because, in seeking repayment, it is making benefit determinations.  Aetna argues that it is not acting as a fiduciary in seeking repayment from the Providers and, therefore, its claims could not have originally been brought under ERISA.

As to the second prong, the Providers argue that there is no independent duty between any of the plaintiffs and Aetna beyond those imposed by the relevant benefit plans.  Aetna, on the other hand, argues that its allegations are that the Providers violated independent duties under state law and, thus, the claims against the Providers are not derived entirely from ERISA plans.

As this Court has recently recognized, a number of cases in this district and elsewhere have held that ERISA does not completely preempt claims brought by an insurer who sues a provider for fraudulent or negligent misbilling.  *See Tri3 Enterprises, LLC v. Aetna Inc.*, 2012 WL 1416530 (D.N.J. April 24, 2012) (citing cases); *see also Horizon Blue Cross Blue Shield of New Jersey v. Transitions Recovery*, 2011 WL 2413173 (D.N.J. June 10, 2011) (ERISA did not completely preempt insurer's state law fraud and negligent misrepresentation claims because insurer "cannot obtain the relief it seeks by bringing a claim under [ERISA's civil enforcement provision] § 502(a)."); *Aetna Health Inc. v. Health Goals Chiropractic Center, Inc.*, 2011 WL 1343047 (D.N.J. April 7, 2011) (ERISA did not preempt plaintiff's state law fraud and negligent misrepresentation claims because plaintiff was not acting in the capacity as a fiduciary in bringing its claims and, even if plaintiff was a fiduciary, the claims arose from a separate independent duty); *Aetna Health Inc. v. Srinivasan*, 2010 WL 5392697 (D.N.J. December 22, 2010)(ERISA did not preempt state law fraud and negligent misrepresentation claims not preempted because insurer was not acting as fiduciary and claims were predicated on a legal duty independent of ERISA); *Horizon BCBC v. East Brunswick Surgery Ctr.*, 623 F. Supp. 2d 568 (D.N.J. 2009) ("Notably, Defendants cite to, and the Court is aware of, no case which has held that a health care plan, similarly situated to Plaintiff, which seeks damages from the overpayment of benefits to a health care provider arising from statutory and common law fraud claims, is

acting in a way that enforces the rights of a patient-assignor so as to subject those claims to

ERISA's enforcement mechanisms.").[2]

This case is similar to those above. Aetna's counterclaims against the Providers are

based upon allegations that the Providers submitted fraudulent or negligent bills to Aetna. The

Court finds, consistent with many of the authorities cited above, that Aetna has not brought such

claims in its capacity as a fiduciary.

Under ERISA,

a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. 1002(21)(A). The question here is not, however, whether Aetna can generally be

considered a fiduciary under ERISA; the relevant inquiry is whether Aetna is "acting as a

fiduciary in proceeding with its claims, or stated another way, does [Aetna] assert its claims …

on behalf of plan beneficiaries." *East Brunswick Surgery Center*, 623 F. Supp. 2d at 575. Here,

as the victim of the Providers' alleged fraud, Aetna brings its counterclaims on its own behalf

and is not acting in the capacity of a fiduciary. *See, e.g., Health Goals*, 2011 WL 1343047 at *5

("Plaintiffs asserted the claims in their own capacity and on behalf of themselves and their

business interests. Plaintiffs do not seek to deny or control benefits as a fiduciary, nor are any of

---

[2] The providers point to *Merling v. Horizon Blue Cross and Blue Shield of New Jersey*, 2009 WL 2382319 (D.N.J. July 31, 2009), which held that an insurer's common law fraud and misrepresentation claims were preempted by ERISA. The *Merling* court concluded that the two-prong test for preemption was fulfilled based on the court's findings that the insurer could have brought its claim under § 502(a) and, further that "plaintiffs' potential liability derives entirely from the duties imposed by the Plan" as interpretation of the plan's terms, specifically with respect to whether plaintiffs' claims were covered, form an "essential" part of the counterclaims. Factually, *Merling* stands on somewhat different ground because it involved claims against patients, not providers. Moreover, to the extent that the Providers urge the Court to adopt the reasoning of *Merling*, the Court finds that the weight of the authority in this district and the better reasoned view to be to the contrary.

their claims predicated on Defendants' failure to provide proper benefits to a plan beneficiary. Instead, the claims emulated from Defendants' alleged scheme to defraud Plaintiffs."); *Srinivasan*, 2010 WL 5392697 at *3 ("Here, [plaintiff] brings claims … based on allegations that [defendant] submitted fraudulent claim forms.  [Plaintiff] is acting in its own capacity, not on behalf of patients.).  Thus, the first prong of *Pascack Valley* is not met.

However, even if Aetna is acting as a fiduciary, the Court finds that Aetna's counterclaims are not preempted, as the claims arise from independent legal duties that exists outside of any ERISA plan.  To meet the second prong of *Pascack Valley*, the Providers must demonstrate that the state claims "are derived entirely from the particular rights and obligations established" by the plans.  *East Brunswick Surgery Ctr.*, 623 F.Supp.2d at 578.  This they have not done.  Here, Aetna's claims are based upon an independent duty that arises under New Jersey's insurance fraud statute and common law and prohibit providers from committing fraud, including submitting fraudulent bills to an insurer for payment.  As noted by the Court in *Health Goals*:

> Absent the provisions of the plan, an independent legal duty existed between Plaintiffs and Defendants. This duty, imposed by New Jersey's insurance fraud statute and its common law counterparts, prohibited Defendants from committing fraud or submitting fraudulent claims. … These laws represent New Jersey's efforts to prevent and deter insurance fraud.  Defendants' obligation to obey them was not dependent on ERISA plans, but rather arose separately and independently from any contractual duties prescribed by ERISA. … [T]he adjudication of Plaintiffs' state claims appears to require minimal or cursory consultation of the plans and factual rather than legal points of contention.

2011 WL 1343047 at *6 (citations omitted).

Furthermore, the Court rejects the Providers' attempts to frame Aetna's counterclaims as essentially a coverage dispute with the "critical issue" being what the Providers "are entitled to under Aetna's plans."  Pl. Brf. at 15.  This simply is not the case.  While the plans at issue may

be governed by ERISA, Aetna's claims are not "derived entirely from the particular rights and obligations established by the plans," as the Providers must show to establish preemption. *East Brunswick Surgery Center*, 623 F.Supp.2d at 578. As such, Aetna's counterclaims are not completely preempted by ERISA.

b.  Express Preemption

The Providers assert that Aetna's counterclaims are expressly preempted by ERISA § 514. Pursuant to Section 514(a), ERISA, with exceptions not applicable here, "shall supersede any and all State laws insofar as they may now or hereafter *relate to* an employee benefit plan ...." 29 U.S.C. § 1144(a) (emphasis added). The objective of this preemption provision is "to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 657, 115 S. Ct. 1671, 131 L. Ed. 2d 695 (1995).

"A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). The term "relate to" in § 514(a) in has been broadly construed by the Supreme Court, but the Court has also "recognized that the term 'relate to' cannot be taken "to extend to the furthest stretch of its indeterminacy," or else "for all practical purposes pre-emption would never run its course." *Egelhoff v. Egelhoff ex rel. Breiner*,  532 U.S. 141, 146-147, 121 S. Ct. 1322, 1327, 149 L. Ed. 2d 264 (2001). Thus, "to determine whether a state law has the forbidden connection, we look both to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the state law on ERISA plans." *Id.* (quoting *California Div. of*

*Labor Standards Enforcement v. Dillingham Constr., N. A., Inc.*, 519 U.S. 316, 325, 117 S. Ct. 832, 136 L. Ed. 2d 791 (1997)).

The Third Circuit has held that "[a] rule of law relates to an ERISA plan if it is specifically designed to affect employee benefit plans, if it singles out such plans for special treatment, or if the rights or restrictions it creates are predicated on the existence of such a plan." *United Wire, Metal & Mach. Health & Welfare Fund v. Morristown Memorial Hosp.*, 995 F.2d 1179, 1192 (3d Cir. 1993). Furthermore, "a state rule of law may be preempted even though it has no such direct nexus with ERISA plans if its effect is to dictate or restrict the choices of ERISA plans with regard to their benefits, structure, reporting and administration, or if allowing states to have such rules would impair the ability of a plan to function simultaneously in a number of states." *Id.*

Here, the Providers allege that "Aetna's state law claims" are "related to" ERISA plans "because their disposition will require an analysis of the terms and conditions of each Plan in issue to determine whether or not the coverage distinction Aetna references actually exists." Pl. Brf. at 18. Similar arguments were rejected in *Horizon Blue Cross Blue Shield of New Jersey v. Transitions Recovery*, 2011 WL 2413173 (D.N.J. June 10, 2011), a case relied upon by Aetna here that is factually similar to the present case. Like the present case, the insurer's claims in *Transitions Recovery* included a statutory claim under NJIFPA as well as common law fraud and misrepresentation claims. After a thorough analysis of the controlling precedent, the *Transitions Recovery* court concluded that neither the NJIFPA claims nor the common law claims asserted in that case were preempted under § 514.

First examining the NJIFPA claim, the *Transitions Recovery* court noted that

the NJIFPA is not specifically designed to address ERISA benefit plans. The NJIFPA was designed "to confront aggressively the problem of insurance fraud in

14

> New Jersey." N.J. Stat. Ann. 17:33A–2. The Act accomplishes that goal by
> regulating all types of insurance contracts and creating penalties for fraudulent
> conduct related to insurance claims. Furthermore, the NJIFPA does not single out
> employee benefit plans for special treatment. The NJIFPA's proscriptions apply
> equally to all types of insurance policies, including employee benefit plans.
> Finally, the NJIFPA does not create rights and restrictions that are predicated
> upon the existence of an ERISA plan. Instead, the NJIFPA regulates the conduct
> of insureds seeking insurance benefits, and allows an insurance company to bring
> a cause of action against an insured who attempts to procure insurance benefits by
> fraudulent means.

*Transitions Recovery*, WL 2413173 at *6. The court further found that "the NJIFPA does not

dictate or restrict the choices available under ERISA plans with regard to benefits, structure or

administration, and, allowing plaintiffs to bring claims under the NJIFPA would not impair the

ability of an ERISA plan to function simultaneously in a number of states." *Id.* at *7. As such,

the court concluded that ERISA did not preempt the insurer's NJIFPA claim "because the

NJIFPA creates rights and obligations separate and distinct from ERISA, and the NJIFPA does

not dictate or restrict the choices available under ERISA plans with regard to benefits or

administration." *Id.*

The *Transitions Recovery* court likewise found that the insurer's common law fraud and

negligent misrepresentation claims were not preempted. First, relying upon *Geller v. County

Line Auto Sales, Inc.*, 86 F.3d 18 (2d Cir. 1996), the court concluded that "[w]hen an ERISA

plan is merely the context in which a traditional state tort occurs, § 514(a) does not preempt a

state law cause of action." *Transitions Recovery*, WL 2413173 at *8. Second, the court found

that preempting the claims and denying the plaintiff relief "conflicts with the purposes of

ERISA," which are to protect the interests of plans and their beneficiaries and providing

appropriate remedies and "ready access to the Federal Courts." *Id.* at *9.

The Court finds the reasoning of *Transitions Recovery* persuasive and applicable in the

instant case. Applying the relevant standards outlined above, it is clear that the Providers simply

15

have not shown that any of Aetna's state law claims are preempted under § 514.  Their motion,

therefore, is denied as to their preemption claims.

3.  Administrative Remedies

The Providers argue that Aetna's claims must be dismissed under the doctrine requiring

the exhaustion of administrative remedies because they assert that Aetna was required to provide

them with certain administrative remedies under ERISA but failed to do so.  However, the Court

has determined that ERISA does not preempt the Provider's state law claims; thus, the

exhaustion issue is not relevant.  *See Transitions Recovery*, WL 2413173 at *9 n.7 ("[B]ecause

ERISA does not preempt Plaintiff's state law claims, and Plaintiff's state law claims do not

require exhaustion of administrative remedies, the Court need not consider whether Plaintiff

exhausted all available administrative remedies prior to bringing this lawsuit.").

4.  Plausibility and Particularity

The Providers make several additional arguments alleging dismissal of Aetna's

counterclaims are warranted.  First, the Providers argue that Aetna's fraud claims must be

dismissed because the claims are not pled with the particularity required by Federal Rule of Civil

Procedure 9(b).  Second, they assert that Aetna's unjust enrichment claim fail because a valid

contract exists between some providers and Aetna, because they sound in fraud, and because

they are inadequately pled.  Third, they contend that Aetna has failed to plead a plausible breach

of contract claim against Shirley and Yarns.  Finally, the Providers claim that Aetna has failed to

state a claim for negligent misrepresentation.  The Court addresses each of below.

The Providers contend that Aetna's fraud claims must be dismissed because the claims

lack the particularity required by the federal rules.  Under Rule 9(b), where a complaint alleges

"fraud or mistake," a plaintiff must describe "with particularity" the circumstances that constitute

the fraud or mistake.  Fed. R. Civ. P. 9(b).  Generally speaking, "Rule 9(b) serves to give defendants notice of the claims against them, provide[ ] an increased measure of protection for their reputations, and reduce [ ] the number of frivolous suits brought solely to extract settlements."  *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006) (alterations in original) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)).  The rule requires a plaintiff to plead with particularity the facts supporting the elements of fraud.  *Id.*  Thus, in order to successfully plead fraud under Rule 9(b), a plaintiff must offer "some precision and some measure of substantiation."  *Gutman v. Howard Sav. Bank*, 748 F.Supp. 254, 257 (D.N.J.1990).  A plaintiff may satisfy the rule's requirement "by pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir.2004) (quotations omitted).  A Plaintiff also must allege "who made a misrepresentation to whom and the general content of the misrepresentation."  *Id.*

The Court has carefully reviewed the allegations in Aetna's nearly 100-page, 420-paragraph counterclaims and finds the Providers' argument that the claims lack sufficient specificity to be without merit.  The counterclaims clearly detail, with a high level of specificity, incidents of alleged double-billing, upcoding, miscoding, misbilling and billing for procedures allegedly never performed.  The counterclaims reference the detailed correspondence sent to the Providers identifying the discrepancies found during Aetna's review; provide an exemplary list of patients and dates of service correlating to each type of misrepresentation, and reference computer disks supplied with specific correspondence to several of the providers that detail the claims that Aetna alleges were overpaid.  The Court finds that Aetna's claims contain sufficient factual detail to meet the requirements of Rule 9.

The Providers next argue that Aetna's unjust enrichment claims against Yarns and Shirley must be dismissed because of the existence of a valid contract governing the dispute.  To state a claim for unjust enrichment, a plaintiff must show that "defendant(s) received a benefit and that retention of that benefit without payment would be unjust."  *Mendez v. Avis Budget Group, Inc.*, 2012 WL 1224708 *7 (D.N.J. April 10, 2012) (quoting *Goldsmith v. Camden County Surrogate's Office*, 408 N.J. Super. 376, 382, (App. Div. 2009)).  It is well-established that because unjust enrichment is "not an independent theory of liability, but is the basis for a claim of quasi-contractual liability," a plaintiff may not recover on both a breach of contract claim and an unjust enrichment claim.  *Id.*  As such, the Providers argue that dismissal is warranted.

Although a party may not recover on both theories of liability, many courts in this district have allowed a party to assert claims under both theories in the alternative.  See *Mendez v. Avis Budget Group, Inc.*, 2012 WL 1224708 *8 (D.N.J. April 20, 2012)("[A]t this stage of the pleadings, Plaintiff may plead alternative legal theories, but if the [contract] is found void …, Plaintiff may only proceed with his unjust enrichment claim.  In the alternative, if a valid written contract existed on the terms Plaintiff claims, then the existence of this contract would prevent Plaintiff from recovering for quasi-contractual liability as asserted in an unjust enrichment claim."); *Wells Fargo Bank Northwest, N.A. v. American General Life Ins. Co.*, 2011 WL 1899338 *11 (D.N.J. May 19, 2011) ("Although the gravamen of [the] complaint, even if amended, is still largely contractual, quasi-contract claims may nonetheless be pled in the alternative to contract based claims."); *Simonson v. Hertz Corp.*, 2011 WL 1205584 *7 (D.N.J. March 28, 2011) ("While a plaintiff may not recover on both a breach of contract claim and an unjust enrichment claim, a plaintiff may plead alternative and inconsistent legal causes of action

arising out of the same facts.") (citing Fed. R. Civ. P. 8(d)(2); 8(d)(3)); *Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, 2008 WL 5381227, at *9 (D.N.J. Dec.17, 2008) (unjust enrichment claim may be sustained independently as an alternative theory of recovery); *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 736 (D.N.J. 2008) ("This Court has regularly permitted claims for both unjust enrichment and breach of contract to proceed at the motion to dismiss stage, finding that dismissal of one of these claims would be premature.")(citing cases). The Court is in agreement with this authority and finds that here, given the early stage in the litigation, the Providers' motion is premature.  Aetna may plead both theories of liability in the alternative.

The Providers next argue that Aetna's unjust enrichment claims must be dismissed because the Providers allege that such claim sound in fraud and fail to meet Rule 9(b)'s particularity requirement.  However, the unjust enrichment claims are premised on allegations that the Providers received funds to which they were not entitled because, for example, the Providers allegedly did not perform the services for which Aetna provided them reimbursement, not because such funds were fraudulently obtained.  Moreover, even if the unjust enrichment claims were subject to Rule 9(b)'s pleading requirements, the Court finds that Aetna has satisfied the rule and has sufficiently injected  "some precision and some measure of substantiation" into its claims.  *Gutman*, 748 F.Supp. at 257.

Finally, at least with regard to Aetna's unjust enrichment claim, the Providers argue that the claim is not adequately pled because "Aetna merely alleges billing disputes but does not make any allegation of fact that these disputes occurred" and Aetna cannot claim unjust enrichment because it allegedly has recouped some of the monies.  As to the first statement, the Court agrees with Aetna that it is "nonsensical."  Aetna Brf. at 29.  Moreover, Aetna has

properly pled facts supporting each element of an unjust enrichment claim.  As to the second

argument, while the Providers cite to absolutely nothing in support, the three-sentence argument

appears to be based on matters outside the pleading and is, therefore, not appropriate at this

stage.

Turning to Aetna's breach of contract claims, the Providers allege that the claims against

Shirley and Yarns must fail because they do not meet the basic pleading requirement of Rule 8.

The Providers' argument is completely without merit.  To state a claim for breach of contract,

Aetna must allege the existence of a contract between the parties, a breach of that contract, that

Aetna performed its own contractual obligations, and damages flowing from the breach.

*Frederico v. Home Depot*, 507 F.3d 188, 203 -204 (3d Cir. 2007).  Here, Aetna alleges that (1) it

was a party to contracts with Shirley and Yarns (specifically, the provider agreements) that

bound these providers to certain obligations (*e.g.*, submit claims for benefits within 90 days of

rendering care, submit bills in a certain manner, comply with certain Aetna policies, *etc.*); (2)

that these providers submitted bills for services in violation of the contracts with Aetna; (3) that

Aetna paid these providers monies that they were not entitled; and (4) Aetna suffered damages as

a result of the breach.  The Court finds Aetna's claims satisfy the applicable standards of Rule 8,

*Twombly* and *Iqbal*.

Last, the Court turns to Aetna's negligent misrepresentation claim.  To state a claim for

negligent misrepresentation, a plaintiff must show "[a]n incorrect statement, negligently made

and justifiably relied on," proximately causing an economic loss.  *Konover Constr. Corp. v. E.

Coast Constr. Servs. Corp.*, 420 F.Supp.2d 366, 370 (D.N.J. 2006).   The misrepresentation must

be made by a person with a duty to the plaintiff.  *Roll v. Singh*, 2008 WL 3413863, at *20

(D.N.J. June 26, 2008).  Here, the Providers first argue that Aetna's negligent misrepresentation

claims should be dismissed because the Providers "have no duty" to properly bill Aetna. However, as Aetna notes, the counterclaims identify a number of sources that impose such a duty on the Providers.  *See* Counterclaims ¶¶ 24 (claim forms); 25 (New York code of chiropractic conduct); 86 (New Jersey law); 259 (Texas law); 358 (Georgia law).

The Providers also argue that Aetna's misrepresentation claims against them sound in fraud and fail because the claims do not comply with Rule 9(b).  For the same reasons as discussed earlier with the Providers' 9(b) arguments, the Court finds the Providers' argument to be without merit.  For the reasons above, the Providers' motion to dismiss Aetna's counterclaims is denied.

## II.  Appeal of Magistrate Judge Ruling

Plaintiffs appeal from the October 7, 2011 Order of Magistrate Judge Bongiovanni denying Plaintiff's motion for leave to file a second amended complaint.  Plaintiffs sought to amend their complaint to reassert the claims of Peter Manz, whose claims had been dismissed by this Court on motion by Defendants on the ground that his participating provider agreement required him to arbitrate his claims.  Plaintiffs had argued that Manz's claims were not arbitrable because he sought only equitable relief  that was not covered by the arbitration clause at issue. The Court disagreed, and found that the nature of the relief sought by Manz was legal, not equitable, in nature.  Plaintiffs then sought to amend their complaint to expressly exclude monetary relief from Manz's claims.  The Magistrate Judge denied that motion.  For the reasons below, that decision is affirmed.

## A.  Standard of Review

When a party appeals a Magistrate Judge order on a non-dispositive motion, the District Court must set aside any part of the order that is "clearly erroneous or contrary to law."  L. Civ.

R. 72. 1(c)(1)(A).  A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Thomas v. Ford Motor Co.*, 137 F.Supp.2d 575, 579 (D.N.J.2001) (quoting *Lo Bosco v. Kure Eng'g Ltd.*, 891 F.Supp. 1035, 1037 (D.N.J.1995)).  "Where a Magistrate Judge is authorized to exercise his or her discretion in determining a non-dispositive motion, the decision will be reversed only for an abuse of that discretion." *Id.* (*citing Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 177 F.R.D. 205, 214 (D.N.J.1997); *Kresefsky v. Panasonic Communications and Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J.1996)).

Motions to amend are generally considered to be non-dispositive pretrial matters.  *Ford Motor Co. v. Edgewood Properties, Inc.*, 2011 WL 1599609 at *2 n.2 (D.N.J. April 27, 2011) ("Motions to amend pleadings are considered non-dispositive.").  Plaintiffs, however, absent citation to any authority, urge the Court to apply the *de novo* standard of review normally applicable to rulings on dispositive issues because Plaintiffs contend that the result of Judge Bongiovanni's Order "is that [Manz's] claims are dismissed in their entirety and he is compelled to arbitrate his dispute rather than pursue litigation." Pl. Brf. at 3.  Judge Bongiovanni's Order, however, did not dispose of any claim before the Court.  It was this Court's Order that dismissed Manz's claims based on the arbitration provision in the agreement between Aetna and Manz. The Court, therefore, rejects Plaintiffs' argument.  However, the Court notes that whether it applies a *de novo* or clearly erroneous standard of review, it reaches the same conclusion.

## B.  Dismissal of Manz's Claims

By way of an Opinion and Order dated June 17, 2011, this Court granted a motion by Aetna to dismiss Manz's claims or otherwise compel arbitration of those claims, finding that Manz's claims fell within the scope of the arbitration clause of his provider agreement with

Aetna.  As relevant here, the arbitration clause provided as follows:  "Any controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof, except for temporary, preliminary, or permanent injunctive relief or any other form of equitable relief, shall be settled by binding arbitration …"  June 17th Opinion at 25-26.  In finding that Manz's claims were within the scope of the arbitration clause, the Court rejected an argument by Plaintiff that Manz was seeking solely equitable relief:

> The Court agrees with Defendants that the ultimate relief sought by Egozi and Manz is legal rather than equitable, as they primarily seek monies allegedly due and owing in accordance with their provider agreements. … As Aetna points out, "a plaintiff cannot convert a claim of damages for breach of contract into an equitable claim by the facile trick of asking that the defendant be enjoined from refusing to honor its obligation to pay the plaintiff what the plaintiff is owed under the contract and appending to that request a request for payment of the amount owed. A claim for money due and owing under a contract is 'quintessentially an action at law.'"

*Id.* at 28 (quoting *Wal–Mart Stores, Inc. Associates' Health and Welfare Plan v. Wells*, 213 F.3d 398, 401 (7th Cir. 2000).

C.  Denial of Plaintiff's Motion to Amend

Shortly after the dismissal of Manz's claims, Plaintiff moved for leave to file a second amended complaint ("SAC") and argued that this new complaint clarified that Manz's claims were purely equitable in nature and, consequently, not subject to the arbitration clause.  By Opinion and Order dated October 7, 2011, Judge Bongiovanni denied the motion, finding that the proposed amendment would be futile.  As stated in the October 7th Opinion:

> Judge Pisano previously ruled on the nature of the relief sought by Plaintiff Manz in the June 17, 2011 Order.  At that time, the Court found that the relief he sought was truly legal in nature and, thus, was within the scope of the arbitration agreement signed by Plaintiff Manz.  Therefore, the specific issue before the Court in this Motion is whether Plaintiff Manz's claims as re-worded in the proposed SAC would cause the dispute to fall outside of the scope of the arbitration clause contained in his provider agreement.  … Defendants maintain that Plaintiffs still seek legal relief under the guise of equitable relief and the

> Court agrees. The Court addressed this issue at length in the June 17, 2011
> Opinion. Plaintiffs cannot now, through re-wording, change the nature of the
> relief they seek.

October 7th Opinion at 4-5.

D.  Analysis

There is no dispute about the legal standard applied by the Magistrate Judge. As Judge Bongiovanni noted, pursuant to Federal Rule of Civil Procedure 15, leave to amend the pleadings is generally given freely. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). However, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Foman*, 371 U.S. at 182.

The Court finds no error in the Magistrate Judge's ruling that the proposed amendment would be futile. Although the SAC contains added language purporting to "confirm" that Manz "is not seeking any form of monetary relief," the substance of the relief sought by Manz in the SAC is little changed from the earlier complaint. Despite Plaintiffs' efforts to couch Manz's claims in equitable terms, the dispute between the parties is essentially a reimbursement dispute, that is, one about money. For example, in the SAC Manz continues to challenge Aetna's entitlement to recover monies paid pursuant to Manz's provider agreement. SAC ¶ 380. Manz also apparently continues to seek payment on claims denied through pre-payment review. SAC ¶¶ 166, 168-69. Consequently, the decision of the Magistrate Judge is hereby affirmed.

**III.  Conclusion**

For the reasons above, the Providers' motion to dismiss Aetna's counterclaims is denied.

The October 7, 2011 Order of the Magistrate Judge is hereby affirmed.  An appropriate Order

accompanies this Opinion.

s/ JOEL A. PISANO
Joel A. Pisano, United States District Judge

Dated:  May 8, 2012