**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RECEIVED
DEC 31 2014
AT 8:30_____M
WILLIAM T WALSH CLERK

ASSOCIATION OF NEW JERSEY
CHIROPRACTERS, et al.,

        Plaintiffs,

v.

AETNA, INC., et al.,

        Defendants.

Civil Action No. 09-3761 (MAS) (TJB)

**OPINION**

**SHIPP, District Judge**

    This suit is a putative class action brought by healthcare providers and chiropractic professional associations against an insurance company and its affiliates, claiming violations of the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiffs bring suit against Aetna, Inc., and several of its affiliated or subsidiary companies ("Aetna") claiming that the company engages in retroactive benefit determinations that do not comply with ERISA. On June 17, 2011, the Court granted Aetna's motion to compel arbitration of claims brought by Drs. Peter Manz, D.C. ("Dr. Manz"), and Leon Egozi, M.D. ("Dr. Egozi"), pursuant to provider agreements negotiated between them and Aetna. Since the Court's decision, the Third Circuit decided a somewhat similar case, *CardioNet, Inc. v. CignaHealth Corp.*, 751 F.3d 165 (3d Cir. 2014), which Drs. Manz and Egozi contend effects an intervening change in the law warranting reconsideration of the Court's prior decision.

    In response, Aetna contends that the *CardioNet* decision does not modify controlling law and seeks to enforce a settlement it negotiated with Dr. Egozi during the course of arbitration.

Aetna, along with its opposition, filed a cross-motion seeking the Court's enforcement of a settlement and release negotiated with Dr. Egozi. (Defs.' Opp'n Br. & Cross-Motion, ECF No. 165.) Drs. Manz and Egozi filed a reply brief,[1] in which Dr. Egozi simultaneously withdrew his portion of the motion for reconsideration. (Pls.' Reply Br. 1, ECF No. 168-1.) As a result, only Dr. Manz still moves for reconsideration.

The Court has carefully considered the parties' submissions[2] and decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Dr. Manz's motion for reconsideration is granted, and Aetna's motion to enforce the settlement agreement is denied as moot.

I.  **Background**

This suit concerns the payment and reimbursement procedure employed between Aetna and healthcare providers. Plaintiffs are licensed medical providers and related associations. (First Am. Compl. ("FAC") ¶ 1, ECF No. 35.)[3] Dr. Manz[4] is a licensed chiropractic physician. (*Id.* ¶ 13.) Aetna is an insurance company that offers, underwrites, and administers commercial health plans ("Plans"), which cover certain products and services ("Covered Services") for Plan participants ("Aetna Insureds"), the cost of which are reimbursed by Aetna. (*Id.* ¶ 2.) The vast majority of Aetna Insureds are administered as part of various private employee welfare benefit

---

[1] Local Civil Rule 7.1(d)(3) prohibits the filing of reply briefs in support of motions for reconsideration, "unless permitted by the Court." L.Civ.R.7.1(d)(3). Here, Drs. Manz and Egozi requested leave to file a reply brief, and the Court grants that request. Accordingly, Drs. Manz and Egozi's reply brief will be considered by the Court.
[2] Aetna improperly submitted a reply brief in further support of its cross-motion without leave of the Court. *See* L.Civ.R. 7.1(h). Accordingly, this submission will not be considered.
[3] As Dr. Manz moves for reconsideration of the Court's decision on a motion to compel arbitration, the Court will apply a motion to dismiss standard and accept the factual allegations of the FAC as true. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773-75 (3d Cir. 2013).
[4] Because only Dr. Manz currently moves for reconsideration, the Court's discussion of the case's background is limited to the allegations related to Dr. Manz.

plans governed by ERISA. (*Id.* ¶ 4.) Dr. Manz entered into a Physician Group Agreement ("PGA") with Aetna, which obligates Dr. Manz to offer Covered Services to Aetna Insureds at agreed-upon discounted rates, and is thus a participating provider with Aetna. (*Id.* ¶ 13.) When Dr. Manz performed Covered Services for Aetna Insureds, he obtained claim assignments, giving him the right to receive payment from Aetna. (*Id.* ¶ 15.) Dr. Manz asserts that, despite an initial determination of coverage and payment, Aetna conducted post-payment audits and made retroactive benefit determinations, seeking repayment of reimbursements already made for services previously determined to be covered by Aetna Plans. (*Id.* ¶¶ 9-10.) Dr. Manz alleges that Aetna's post-payment review procedures constitute "adverse benefit determinations" under ERISA. (*Id.* ¶ 360.)

Dr. Manz claims that these retroactive benefit denials violate the terms of ERISA. Specifically, Dr. Manz brings three counts under ERISA, all of which allege that Aetna violated its obligations under ERISA with respect to adverse benefit determinations, including disclosure obligations and failure to provide a full and fair review of benefit denials.[5] (FAC ¶¶ 357-373, 381-389.)

Plaintiffs filed a complaint on July 29, 2009 (ECF No. 1), and the case was assigned to the Honorable Joel A. Pisano, U.S.D.J. Roughly, one year later, Plaintiffs filed the FAC. (ECF No. 35.) Shortly after, Aetna filed several separate motions, seeking, *inter alia*, dismissal of the FAC for failure to state a claim and to compel arbitration of Drs. Manz and Egozi's claims. (ECF Nos. 38, 39, 41, 42, 43.) On June 17, 2011, the Court issued an opinion, deciding these motions simultaneously. The Court dismissed all of the asserted RICO claims but declined to dismiss

---

[5] Dr. Manz previously asserted additional claims under RICO; those claims were dismissed for failure to state a claim. (Op. at 29, June 17, 2011, ECF No. 90.)

Plaintiffs' ERISA claims. In addition, the Court dismissed all of Drs. Manz and Egozi's claims and compelled the arbitration of those claims. (Order, June 17, 2011, ECF No. 91.)

On May 24, 2012, the parties stipulated to, and the Court ordered, a stay of the proceedings pending a decision before the Third Circuit in a related case. (ECF No. 138.) A decision in that case was rendered in August 2013, *Tri3 Enters. LLC v. Aetna, Inc.*, 535 F. App'x 192 (3d Cir. 2013), and the parties requested that the stay be lifted in November 2013 (ECF No. 140). On December 9, 2013, the case was reassigned to the Undersigned (ECF No. 142), and the stay was lifted (ECF No. 144).

On May 6, 2014, the Third Circuit decided *CardioNet, Inc. v. CignaHealth Corp.*, 751 F.3d 165 (3d Cir. 2014), which Dr. Manz contends results in a change in the law controlling the Court's previous decision compelling arbitration. The instant motion was filed on May 27, 2014. (ECF No. 160.)

## II. Discussion

### A. Dr. Egozi

At the outset, the Court must determine what is to be decided with respect to Dr. Egozi. As discussed, in reply to Aetna's opposition, Dr. Egozi withdrew his motion for reconsideration. (Pls.' Reply Br. 1, ECF No. 168-1.) Aetna, however, still cross moves to enforce the release it obtained from Dr. Egozi in settlement of his claims against Aetna. Aetna requests that the Court enforce the settlement and release negotiated with Dr. Egozi. (Defs.' Opp'n Br. & Cross-Motion, ECF No. 165.)

The Court declines to enforce the settlement between Dr. Egozi and Aetna. While a release can provide a defense to an affirmative claim for relief, *see Domanske v. Rapid-Am. Corp.*, 330

N.J. Super. 241, 246 (App. Div. 2000),[6] here, as Aetna correctly points out, Dr. Egozi is not currently a party. The entirety of Dr. Egozi's claims were dismissed and submitted to arbitration. (Order, June 17, 2011, ECF No. 91.) Further, federal courts generally lack the "inherent power" to adjudicate disputes over obligations stemming from the settlement of claims previously before them. *See generally Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) (adjudication of settlement dispute requires independent basis of jurisdiction). Because Dr. Egozi has withdrawn his motion and is not a party to the case, the Court lacks any basis for assessing the validity of the settlement and release negotiated between Dr. Egozi and Aetna. Accordingly, the Court dismisses Aetna's cross-motion as moot.

**B.     Dr. Manz**

Dr. Manz's motion for reconsideration seeks to vacate the Court's order compelling arbitration. In the District of New Jersey, an interlocutory ruling may be reviewed on a motion for reconsideration in specific, discrete circumstances. *See* L.Civ.R. 7.1(i). "[A] judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion [at issue]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Here, Dr. Manz seeks reconsideration solely on the grounds that the Third Circuit's decision in *CardioNet* caused an intervening change in the controlling law.

---

[6] The interpretation of a settlement agreement is governed by state law. *Excelsior Ins. Co. v. Pennsbury Pain Ctr.*, 975 F. Supp. 342, 349 (D.N.J. 1996).

The Court has the discretion to decide the merits of Dr. Manz's motion. Local Civil Rule 7.1(i) explicitly requires that motions for reconsideration be filed no later than fourteen days after the decision at issue. However, courts in this district have relaxed this requirement when the motion is based on an intervening change in the law. *See Elec. Mobility Corp. v. Bourns Sensors/Controls, Inc.*, 87 F. Supp. 2d 394, 401 (D.N.J. 2000) (citing L.Civ.R. 1.1 (local rules supplement Federal Rules of Civil Procedure); L.Civ.R. 83.2 (local rules may be relaxed to prevent injustice)); *see also Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116-17 (3d Cir. 1997) (recognizing that a finding of "extraordinary circumstances" based on a change in the controlling law warranted reconsideration of a prior decision of the same court). Here, if *CardioNet* indeed effected a change in the controlling law, reconsideration is appropriate. The nearly three-year timeframe between the Court's decision to compel arbitration and Dr. Manz's motion for reconsideration is not the result of delay or bad faith: *CardioNet*, the purported intervening change in the law, was decided on May 6, 2014, and Dr. Manz's motion for reconsideration was filed on May 27, 2014. Dr. Manz presented the same argument to the Court on the initial motion to compel arbitration, only without the Third Circuit's decision in *CardioNet*. Further, this case was stayed, pending the appeal of a related case, for approximately nineteen of the thirty-five months between the Court's order compelling arbitration and the instant motion for reconsideration, alleviating any potential prejudice caused by Dr. Manz's absence from the suit. For the above reasons, the Court will decide Dr. Manz's motion on its merits.[7]

---

[7] Aetna asserts, without support, that Dr. Manz's motion should be denied regardless of any purported change in controlling law, because the related arbitration brought by Aetna asserting state-law claims against Dr. Manz has not concluded. Yet, if the Court's initial decision compelling arbitration is contrary to controlling law and the Provider Agreement does not require arbitration of the claims at issue, deference to arbitration would severely prejudice Dr. Manz's right to relief in this Court. *Cf. Great W. Mining & Mineral Co. v. ADR Options, Inc.*, 533 F.

A motion requesting reconsideration based on a change in law must indeed be supported by an actual change in the law. A decision clarifying existing law is insufficient. *Ivan v. Cnty. of Middlesex*, 612 F. Supp. 2d 546, 552 (D.N.J. 2009). Yet, a decision by the Third Circuit unquestionably binds this Court. *Pittston Co. v. Sedgwick James of N.Y., Inc.*, 971 F. Supp. 915, 919 (D.N.J. 1997) ("A district court owes 'blind fealty' to the precedent of a circuit court.").

Here, Dr. Manz asserts that the Third Circuit's decision in *CardioNet* controls and requires that the Court vacate its prior decision compelling arbitration. Dr. Manz argues that *CardioNet* stands for the proposition that "the right to litigate ERISA claims in federal court 'travel[s] with a claim.'" (Pls.' Moving Br. 8, ECF 160 (quoting *CardioNet*, 751 F.3d at 178).) In other words, he asserts that an assignee of an ERISA claim, *e.g.*, a healthcare provider, may bring those claims in federal court, regardless of any agreement between the provider and the insurer to arbitrate claims between them, if the assignor of the claim, *e.g.*, a participant in an ERISA plan, was not obligated to arbitrate those same claims. Dr. Manz contends that this holding is an intervening change in the law mandating reconsideration and vacatur of the Court's order compelling arbitration. The Court agrees.

The Third Circuit, in *CardioNet*, evaluated the arbitrability of certain ERISA claims brought by providers. Plaintiffs, two in-network providers ("Providers") for Defendant Cigna Health Corporation ("Cigna"), brought suit asserting that Cigna's new policy refusing coverage for a certain service delivered by the Providers amounted to several violations of ERISA. *CardioNet, Inc.*, 751 F.3d at 169-70. Important for the instant case, the Providers asserted two

---

App'x 132, 135 (3d Cir. 2013) (upholding dismissal under doctrines of entire controversy and *res judicata* following arbitration of claims).

different types of ERISA claims: (1) direct claims, on behalf of themselves,[8] and (2) derivative claims, brought by the Providers "standing in the shoes of [their] [patients]." *Id.* at 170. The Providers obtained the right to bring these claims, via assignment, in exchange for the Providers' services, free of charge. *Id.* The Providers' derivative claims sought "reimbursement for the cost of the . . . services provided to [participants], as well as injunctive relief requiring CIGNA to reverse its policy of denying [these] claims." *Id.* at 176.

Prior to the Third Circuit's decision, the district court in *CardioNet* held that the Providers' derivative claims were subject to arbitration. The district court held that the derivative claims were subject to the Providers' agreement to arbitrate claims with Cigna. The district court held that "[p]laintiffs have a preexisting duty under their agreements with CIGNA to arbitrate disputes that are substantively identical to the claims they now seek to bring as assignees." *CardioNet, Inc. v. Cigna Health Corp.*, 945 F. Supp. 2d 620, 627 (E.D. Pa. 2013). The district court, in a straightforward analysis, considered the scope of the arbitration clause and the essential nature of the Providers' claims and determined that the claims fell within the arbitration clause. *Id.* at 625-27.

The Third Circuit, reversing the lower court, held that the Providers' claims were not subject to arbitration. Cigna argued that, to allow the derivative claims to proceed in federal court, would "vitiate" the Providers' agreement to arbitrate. *CardioNet*, 751 F.3d at 177. The Third Circuit identified "two *independent* infirmities" in Cigna's position, which placed the claims at issue outside the arbitration clause. *Id.* (emphasis added).

---

[8] Because Dr. Manz brings only derivative claims, the portions of the *CardioNet* decision evaluating the Providers' direct claims are not relevant here and are not discussed.

8

First, the court held that the specific nature of the derivative claims brought in that case, in the context of the specific language of the arbitration clause at issue, did not mandate arbitration. *Id.* The Providers' claims in *CardioNet* sought to obtain coverage for the Providers' services under participants' benefit plans. The arbitration clause at issue required arbitration of "only those disputes 'regarding the performance or interpretation of the [provider agreement].'" *Id.* at 173-74 (quoting the arbitration clause at issue). The Third Circuit held that patients' assigned ERISA claims for denial of benefits were not related to the terms or potential breach of the Providers' agreement with Cigna. *Id.* at 177. As a result, the Providers' claims did not fall within the scope of the arbitration clause.

Second, the *CardioNet* court held that, regardless of the language of the arbitration clause in question, the Providers' claims were not subject to arbitration, because the Providers' patients, had they brought the claims themselves, were not bound by the arbitration clause, "at least where . . . the [provider agreement] does not explicitly require the arbitration of assigned claims." *Id.* at 178. More specifically, the court held that, where an agreement between a provider and insurer does not explicitly require that patient-assigned claims be arbitrated, and the patient-assignor did not have an independent duty to arbitrate, a provider-assignee bringing patient-assigned claims cannot be compelled to arbitrate. *Id.* The court looked to fundamental principles of assignment law: "an assignee of a contract occupies the *same legal position* under a contract as did the original contracting party[;] he or she can acquire through the assignment *no more and no fewer rights* that the assignor had, and cannot recover under the assignment any more than the assignor could recover." *Id.* (emphasis in original) (internal quotation omitted). Because the claims were derivative and assigned to the Providers and the patients were not under an independent duty to

9

arbitrate, the Providers were not compelled to arbitrate, as they had only agreed to arbitrate direct claims. *Id.*

Dr. Manz brings a motion for reconsideration based on an intervening change in law; as a result, the Court must determine whether either of *CardioNet*'s two holdings, discussed above, do in fact create a new proposition of law. The first holding is not an intervening change in law. The court, in a fact-specific analysis, looked to the scope of the arbitration clause and the nature of the claims asserted and determined whether the claims fell within the reach of the arbitration clause. *See id.* at 177-78. The court's second holding, however, represents a new proposition of law. Although the court relied on well-accepted principles of assignment law in formulating its holding, the Third Circuit has not previously held whether a patient-assigned ERISA claim is subject to arbitration pursuant to an agreement between a provider and insurance company. Indeed, in *CardioNet*, the court, for the first time in this circuit, answered an important threshold question of law, holding that "health care providers may obtain standing to sue by assignment from a plan participant." *Id.* at 176 n.10. Courts in this district have already recognized the precedential value of *CardioNet*, for both the threshold issue of provider standing to assert patient-assigned ERISA claims, *see Spine Surgery Assoc. & Discovery Imaging, PC v. INDECS Corp.*, — F. Supp. 3d —, No. 13-1390, 2014 WL 4854508, at *4 (D.N.J. Sept. 30, 2014), and for the secondary holding regarding the arbitrability of patient-assigned ERISA claims, *Premier Health Ctr., P.C. v. UnitedHealth Grp.*, No. 11-425, 2014 WL 4271970, at *26-27 (D.N.J. Aug. 28, 2014).[9]

---

[9] The Third Circuit itself recognized the precedential value of the *CardioNet* opinion by designating the opinion precedential. 3d Cir. Internal Operating Procedure 5.2 ("An opinion, whether signed or per curiam, is designated as precedential when it has precedential or institutional value.").

The novelty and precedential value of the *CardioNet* decision is demonstrated by the analysis employed by this Court, prior to the decision, and by the lower court in *CardioNet*. Somewhat unsurprisingly, these two decisions employ the same analysis in evaluating the arbitrability of derivative ERISA claims. In *CardioNet*, the district court held that the scope of the arbitration clause and the nature of the claim asserted required that the court defer to arbitration—the Providers could not avoid arbitration simply because of the derivative nature of their claims. *CardioNet*, 945 F. Supp. 2d at 627. Similarly, here, in the Court's prior decision, the Court looked to the Provider Agreements and the claims asserted by Dr. Manz and held that Dr. Manz's claims, which "challenge Aetna's determination of and efforts to recover alleged overpayments," fell within the scope of the arbitration clause. (Op. at 29, June 17, 2011, ECF No. 90.) The similar analysis employed in the two decisions compelling arbitration further supports the conclusion that the Third Circuit's decision in *CardioNet* effected a change in the law controlling the arbitrability of assigned ERISA claims.

This intervening change in the Third Circuit's ERISA and arbitrability jurisprudence mandates reconsideration and requires that the Court vacate its prior order compelling arbitration. While the first, fact-specific holding in *CardioNet* is of less relevance here,[10] the court's second holding is controlling with respect to Dr. Manz's claims. Here, too, Dr. Manz's claims are brought in his capacity as an assignee of his patient's ERISA rights. Aetna does not contend that Dr. Manz's patients, were they to assert claims for violation of ERISA's disclosure regulation, would

---

[10] The first of holding in *CardioNet* is tied directly to the facts of that case, namely the language of the arbitration clause and nature of claims at issue. The arbitration clause in *CardioNet* is substantially narrower than the arbitration clause at issue here. In *CardioNet*, "only those disputes 'regarding the performance or interpretation of the [provider agreement]'" were to be arbitrated. *Id.* at 173-74 (quoting the arbitration clause at issue). Here, Dr. Manz must arbitrate "[a]ny controversy or claims arising out of or relating to" the Provider Agreement. (Op. at 25, June 17, 2011, ECF No. 90.)

11

12

be compelled to arbitrate those claims. Rather, Dr. Manz avers, and Aetna does not dispute, that Dr. Manz's patients would not be required to arbitrate these ERISA claims were they to bring them. Moreover, here, as in *CardioNet*, the Provider Agreement "does not explicitly require arbitration of assigned claims." See *CardioNet*, 751 F.3d at 178. Accordingly, the Court finds *CardioNet* to be factually indistinguishable with regard to *CardioNet*'s second holding.

### III. Conclusion

For the above reasons, Dr. Manz's motion for reconsideration is granted. As a result, the Court vacates its prior order compelling the arbitration of Dr. Manz's claims.

                                    s/ Michael A. Shipp
                                    **MICHAEL A. SHIPP**
                                    **UNITED STATES DISTRICT JUDGE**

**Dated:** December 31, 2014