<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ———————————————— : | |
| ASSOCIATION OF NEW JERSEY : | |
| CHIROPRACTORS, *et al.*, : | |
| : | |
| Plaintiffs, : | |
| : | Civil Action No. 09-3761-BRM-TJB |
| v. : | |
| : | |
| AETNA, INC., *et al.*, : | |
| : | |
| Defendants. : | |
| ————————————————: | |
| : | |
| TRI3 ENTERPRISES, LLC, *et al.*, : | |
| : | |
| Plaintiffs, : | |
| : | Civil Action No. 11-3921-BRM-TJB |
| v. : | |
| : | |
| AETNA, INC., *et al.*, : | **OPINION** |
| : | **TEMPORARILY FILED** |
| Defendants. : | **UNDER SEAL** |
| ————————————————: | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are two separate actions filing a joint Motion for Class Certification pursuant to Federal Rules of Civil Procedure 23.[1] (Dkt. No. 09-3761, ECF No. 241.[2]) The first action was filed in 2009 by Plaintiff Association of New Jersey Chiropractors ("ANJC"). (Dkt. No. 09-3761.) The second action was filed in 2011 by Plaintiffs WMI Enterprises, LLC ("WMI")

---

[1] Both actions were consolidated for the purposes of discovery. Plaintiffs in both actions filed joint motions for class certification, proposing two classes with two corresponding subclasses, discussed below.

[2] Also available at Dkt. No. 11-3921, ECF No. 152. Unless otherwise noted, any ECF citation refers to Dkt. No. 09-3761, with duplicate copies filed in Dkt. No. 11-3921.

and Tri3 Enterprises, LLC ("Tri3 LLC") (collectively, "Tri3")[3] (together with ANJC, "Plaintiffs"). (Dkt. No. 11-3921.) Defendants Aetna, Inc., Aetna Health Inc., Aetna Life Insurance Company, Corporate Health Insurance Company, and Aetna Insurance Company of Connecticut (collectively, "Aetna") oppose the Motion. (ECF No. 247.[4])  Pursuant to Federal Rule of Civil Procedure 78(a), the Court heard oral argument on August 29, 2017, reserved its decision, and permitted supplemental briefing post-argument. (ECF Nos. 262, 266, 268, 269.[5]) For the reasons set forth below, Plaintiffs' Motion for Class Certification is **DENIED**.

## I.   BACKGROUND[6]

### A.   Aetna's Special Investigations Unit

Aetna is an administrator of health benefit plans for plan participants ("Members") in accordance with the terms and conditions of the Members' plan. (ECF No. 241 at 4-5.) Plaintiffs are medical providers who submitted claims for payment to Aetna for services rendered to Aetna's Members.[7] (*Id.* at 1.) Plaintiffs are comprised of in-network providers ("Par Providers") and out-

---

[3] Plaintiffs Tri3 LLC, Wabach Medical Company, LLC and Motion Medical Technology, LLC merged into Integrated Orthopedics. (ECF No. 241 at 4.) Plaintiffs Hoosier Med, LLC, Compression Therapy, LLC, and CMW Medical, LLC are wholly-owned subsidiaries of WMI. (*Id.*)

[4] Also available at Dkt. No. 11-3921, ECF No. 158.

[5] Also available at Dkt. No. 11-3921, ECF Nos. 173, 176, 178, 179.

[6] The parties dispute the method by which Aetna's Special Investigation Unit reviews claims submitted by providers both before and after a claim is paid. (ECF No. 241 at 7; ECF No. 247 at 7-8.) Because the Court may address the merits of the case and look beyond the pleadings on a motion for class certification, *In re Hydrogen Peroxide*, 552 F.3d 305, 310 (3d Cir. 2008) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 630 (1997)), below is a comprehensive summary of the facts based on a reading the papers submitted in connection with this Motion. *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166 ("It may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."). Any factual findings are made for the purpose of this Motion for Class Certification only.

[7] For the purposes of this motion, several Plaintiffs are named as class representatives, including Tri3, a supplier of durable medical equipment, and ANJC, a practice entity comprised of multiple licensed chiropractors. Named Plaintiffs in ANJC practice entity are Donna Restivo, D.C. d/b/a/

of-network providers ("Nonpar Providers"). (*Id.* at 5.) Par Providers are medical providers who contract with Aetna to treat Aetna's Members in exchange for accepting a reduced fee. (*Id.*) Conversely, Nonpar Providers are medical providers who do not contract with Aetna.[8] (*Id.*) However, some Nonpar Providers join third-party provider networks, *e.g.*, Par Providers, who have entered into a separate contractual agreement with Aetna. (ECF No. 247 at 20-21.)

According to Aetna, in an effort to detect and prevent payment of claims resulting from fraud, waste, or abuse, Aetna established a Special Investigations Unit ("SIU"). (*Id.* at 1; ECF No. 241 at 1.) Aetna's SIU investigates suspicious claims submitted by medical providers both before claims are paid ("Pre-payment Review") and after claims are paid ("Post-payment Review"). (ECF No. 241 at 6-7.) Plaintiffs, however, challenge certain policies and procedures of Aetna's SIU. (*Id.* at 1.) Specifically, Plaintiffs challenge Aetna's compliance with the Employee Retirement Income Security Act of 1974 ("ERISA") with respect to the following two distinct aspects of Aetna' claims process: (1) the Explanation of Benefits forms ("EOB") sent to providers by Aetna's SIU following Pre-payment Review; and (2) the overpayment recovery letters ("Overpayment Letters") sent to providers by Aetna's SIU following Post-payment Review. (*Id.* at 1-2.) The following is a summary of those claims processes.

## B.    Pre-payment Review – The OVRUTIL Provider Flag and Resulting EOBs

Plaintiffs and Aetna have different opinions about Aetna's Pre-payment Review process. According to Plaintiffs, Aetna's SIU employs investigators and field analysts who identify certain

---

Restivo Chiropractic ("Restivo"), Todd Carnucci, D.C. and Westfield Health and Rehabilitation, LLC ("Carnucci"), Peter Manz, D.C. and Midwest Chiropractic Center, LLC ("Manz"), Mark Vincent, D.C. d/b/a Avalon Chiropractic ("Vincent"), Jeffrey Shirley, D.C. and Northwest Chiropractic Clinic, P.C. ("Shirley"), Vicky Yarns, D.C., Vicky L. Yarns, P.C., and Atlanta Spine Center, P.C. ("Yarns"), and Donald P. Milione, D.C. ("Milione"). (ECF No. 241 at 3-4.)

[8] Manz, Shirley, and Yarns are Par Providers. (ECF No. 241 at 5.) Restivo, Carnucci, Vincent, Milione, and Tri3 are Nonpar Providers. (*Id.*)

providers using "flags" ("Provider Flags") in order to initiate the Pre-payment Review process for claims submitted by those flagged providers. (*Id.* at 7, 9.) When any Provider Flag is triggered, claims are diverted away from Aetna's usual automated adjudication process and directed to a field analyst. (*Id.* at 8-9.) Field analysts are responsible for Pre-payment Review and for making a payment determination on the claim submitted by the flagged provider. (*Id.*) One of the Provider Flags, the OVRUTIL flag, is allegedly a catch-all flag expanding multiple categories, resulting in the automatic denial of a provider's claims. (*Id.* at 9.) Once the OVRUTIL flag is triggered, Aetna sends providers and Members an EOB (the "OVRUTIL EOB"), describing the services rendered and Aetna's resolution of the claim submitted. (*Id.* at 10; EOBs, Ex. I (ECF No. 241-10) at 1-13.[9]) According to Plaintiffs, the OVRUTIL EOBs state:

> The member's plan of benefits provides coverage for services and supplies that Aetna determines are necessary. To meet this requirement the service or supply must be accepted under recognized professional standards as appropriate and effective for the diagnosis, care or treatment of the disease or injury involved. In addition, it should not be experimental or still under clinical investigation. Based on the information provided, this expense does not meet this requirement of the member's plan of benefits and is not covered. If there is additional information that should be brought to our attention, please contact us.

(ECF No. 241 at 10.) Plaintiffs claim the OVRUTIL EOBs are ambiguous and offer medical providers no reason for claim denials. (*Id.* at 10-11.) Specifically, Plaintiffs' first challenge is whether the content of the OVRUTIL EOBs adequately complies with the notice and appeal requirements mandated under ERISA. (*Id.* at 1.)

In response, Aetna asserts several factual distinctions from Plaintiffs' account of the Pre-payment Review process. Aetna concedes Provider Flags divert claims from the automated claim

---

[9] Also available at Dkt. 11-3921, ECF No. 152-10.

adjudication process, but claims its SIU thoroughly examines each claim submitted by flagged providers. (ECF No. 247 at 11-12.) With respect to the OVRUTIL Provider Flag, Aetna claims the OVRUTIL flag does not always result in claim denials, and claims denied by the OVRUTIL flag are based on one of several different denial codes. (*Id*. at 12.) According to Aetna, because claims denied by the OVRUTIL flag use different denial codes, the content in the OVRUTIL EOBs differ according to the different denial codes used for the flagged provider's claim. (*Id*. at 12-13.)

Further, Aetna claims the EOB is not the only communication it sends to providers and Members after a claim is denied. (*Id*. at 12-14.) According to Aetna, EOBs are supplemented with explanatory letters and EOB appeal inserts. (*Id.* at 13-14.) Explanatory Letters are tailored to the denied claim and includes information regarding the appeal process. (*Id.* at 13.) Additionally, depending on the provider, state, and Members' plan, EOBs are accompanied by EOB appeal inserts, which provide further information on the denied claim. (*Id*. at 14.) Aetna claims "[a]ll of these communications—alone or in combination, depending on the circumstances—provide the requisite notice to the provider[s]." (*Id.* at 2.)

### C.    Post-payment Review – The Overpayment Letter

As to Post-payment Review, Aetna's SIU calculates and pursues overpayments from providers after a claim is paid to them. (ECF No. 241 at 7, 11.) Overpayments are plan benefit fees issued to providers for an amount greater than entitled for the services rendered. (*Id.* at 11.) Although Plaintiffs and Aetna provide similar accounts of Aetna's overpayment recovery process, the parties dispute the extent to which the Overpayment Letters are standardized. (*Id*. at 11-12; ECF No. 247 at 9-10.)

According to Plaintiffs, to recover an overpayment, Aetna's SIU first sends the provider a discrepancy letter ("Discrepancy Letter"), detailing the SIU's payment concerns and inviting the

provider to discuss the discrepancy. (ECF   No. 241 at 11.) Next, if the payment concern is not resolved, the SIU sends an Overpayment Letter, asking the provider to contact Aetna to resolve the matter. (*Id.* at 11-12.) Plaintiffs claim "the SIU makes a demand (the Overpayment Letter), tries to negotiate a settlement, and if unsuccessful, refers the matter to outside counsel for litigation and/or collection." (*Id.* at 13.)

Plaintiffs' primary contention regarding Post-payment Review pertains to the content of the Overpayment Letters sent to providers by Aetna's SIU. (*Id.* at 2.) According to Plaintiffs, the Overpayment Letters follow a general format, which include a listing of the patients who received service, date of service, the corresponding procedure or diagnosis code, and the alleged overpaid amount on the claim. (*Id.*   at 11.) Plaintiffs allege the Overpayment Letters fail to include the notice and appeal rights mandated under ERISA. (*Id.* at 12.)

In response, Aetna challenges several aspects of Plaintiffs' characterization of the Post-payment Review process. (ECF No. 247 at 7-11.) Aetna claims ███████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ (*Id.* at 8.)

Following the initial review, Aetna sends the Overpayment Letter. (*Id.*) Aetna concedes the ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████ (*Id.* at 9.) While those arguments are discussed in more detail below, Aetna notes the ████████████████████████████████████████████ ████████████████████████████████████ (*Id.* at 10.) Determined on a case-by-case

basis, Aetna claims some Overpayment Letters may request a repayment, while other Overpayment Letters merely notify providers of an overpaid claim. (*Id*. at 9-10.)

Ultimately, Plaintiffs' challenge to Post-payment Review concerns the content of the Overpayment Letters sent to providers after Aetna's SIU determined a claim was overpaid. (*Id*. at 2.) Plaintiffs challenge whether the content of the Overpayment Letters adequately complies with the notice and appeal requirements mandated under ERISA. (*Id*. at 2-3.)

### D.    Summary of Claims and Requested Relief

Plaintiffs argue Aetna's OVRUTIL Provider Flags and Overpayment Letters constitute wrongful denials of benefits in violation of Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), and that benefits were wrongfully denied because the content in the OVRUTIL EOBs and the Overpayment Letters failed to satisfy the minimum procedural notice and appeal requirements under Section 503 of ERISA. (ECF No. 241 at 17.) As a remedy, Plaintiffs request: (1) prior claim denials and overpayment determinations to be remanded to Aetna for full and fair review; and (2) injunctive relief to enforce ERISA's notice and appeal requirements for all future claim denials and overpayment determinations. (*Id*. at 17-18.)

Specifically, Plaintiffs first request previously denied claims be remanded to Aetna based on the violation of Section 503 "so that the affected plan Members—or their lawful assignees— may receive the benefit of a full and fair review." (*Id*. at 18.) Significantly, Plaintiffs do not challenge "the underlying merits of each and every benefit denial caused by an Overpayment Letter or OVRUTIL Provider Flag." (*Id*. at 18.) Second, Plaintiffs seek injunctive and declaratory relief under Section 502(a)(3), asking this Court to: (1) declare the Overpayment Letters and OVRUTIL Provider Flag denials to be adverse benefit denials ("ABD"); (2) enjoin Aetna from issuing future

OVRUTIL Provider Flags and Overpayment Letters without properly complying with ERISA's notice and appeal requirements; and (3) grant any other equitable relief. (*Id.* at 18-19.)

## II.    PROPOSED CLASSES

### A.    The Provider Flag Class

Plaintiffs seek to certify a class ("Provider Flag Class"), along with two subclasses, pursuant to Federal Rule of Civil Procedure 23(b)(1) or (b)(2) based on the following proposed class definition:

> All healthcare providers (such as individual practitioners, durable equipment suppliers, or facilities) who, from six (6) years prior to the original filing date of these actions to their final termination ("Class Period"): (1) received reimbursement from Aetna pursuant to an employer-sponsored benefit plan governed by ERISA; and (2) received benefit denials based on the following SIU Provider Flag: OVRUTIL.
>
> This class has two sub-classes: (1) providers who were, at the time they rendered the services in question, Par providers [("Par Providers Subclass")]; and (2) providers who were at the time rendered the services in question, Nonpar providers [("Nonpar Providers Subclass")].

(ECF No. 241 at 19-20.)

### B.    The Overpayment Letter Class

Plaintiffs also seek to certify a class ("Overpayment Letter Class"), along with two subclasses, pursuant to Rule 23(b)(1) or (b)(2) based on the following proposed class definition:

> All healthcare providers (such as individual practitioners, durable equipment suppliers, or facilities) who, from six (6) years prior to the original filing date of these actions to their final termination ("Class Period"): (1) received reimbursement from Aetna pursuant to an employer-sponsored benefit plan governed by ERISA; and (2) after having received benefit payments from Aetna were sent an SIU Overpayment Letter from some or all of those payments. Excluded from this class are all providers who voluntarily paid Aetna, in whole or in part, in response to receiving said SIU Overpayment Letter.

> This class has two sub-classes: (1) [Par Provider Subclass]; and (2) [Nonpar Provider Subclass].

(*Id*. at 20-21.)

## III.   ERISA

Section 502(a) serves as the civil enforcement provision to assert a private right of action under ERISA. 29 U.S.C. § 1132(a). Under Section 502(a) of ERISA, a plan "participant" or "beneficiary" has standing to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004) (quoting 29 U.S.C. § 1132(a)(1)(B)). A plan "participant" is defined as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). A "beneficiary" is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). The right to bring a civil action under ERISA extends to healthcare providers who "obtain derivative standing by assignment from a plan participant or beneficiary." *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015) (citing *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014)). "[A]s a matter of federal common law, when a patient assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA [Section] 502(a)." *Id.* at 372.[10]

---

[10] Aetna challenges whether Plaintiffs and the putative class members have standing to bring the asserted ERISA claims. (ECF No. 247 at 3, 17-20, 30.) Those individualized issues will be discussed, in part, in the Rule 23 analysis, *infra*.

In order to prevail on a Section 502(a)(1)(B) claim, a plaintiff must establish his or her "right to benefits that is legally enforceable against the plan, and that the plan administrator improperly denied those benefits." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (citation omitted). To determine whether claims were improperly denied, the court reviews the benefit denial using an "arbitrary and capricious" standard. *Id.* at 120-21. "An administrator's decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id*. at 121 (quoting *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011).

Under Section 502(a)(3) of ERISA, a civil action may be brought

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3). This section provides for equitable relief for injuries not otherwise remedied under Section 502. *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).

Section 503 "sets forth the basic requirements governing ERISA plans." *Miller*, 632 F.3d at 850–51. "[A] plan that does not satisfy the minimum procedural requirements of [Section] 503 and its regulations operates in violation of ERISA." *Id.* at 852. Section 503 states, in pertinent part, an employee benefit plan must:

> (1) provide adequate notice in writing to any participant or beneficiary whose claims for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133(1)-(2); *see also Mirza v. Ins. Adm'r of Am., Inc.*, 800 F.3d 129, 136 (3d Cir. 2015) ("One of the purposes of 29 U.S.C. § 1133 . . . is to provide claimants with adequate information to ensure effective judicial review."). Additionally, regulations accompanying Section 503 "set[] forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries." 29 C.F.R. § 2560.503-1(a). A plan administrator is required to comply with these regulations and provide written notice when making an ABD. *Miller*, 632 F.3d at 850. An ABD "means any of the following: a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit." 29 C.F.R. § 2560.503-1(m)(4). Accordingly, when an ABD is made, a plan administrator is required to provide the plan's members or beneficiaries with certain rights, including: (1) adequate notice of the ADB; (2) the appeal rights of the ABD; and (3) a full and fair review of the appeal. *Id.* at § 2560.503-1(g)-(h).

With respect to an initial ABD, the written notice must include, in pertinent part:

(i) The specific reason or reasons for the adverse determination;

(ii) Reference to the specific plan provisions on which the determination is based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

(v) In the case of an adverse benefit determination by a group health plan—

(A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a

statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request . . . .

*Id*. at § 2560.503-1(g)(1)(i)-(v). The following requirements pertain to appealing an ABD:

(2) Full and fair review. Except as provided in paragraphs (h)(3) and (h)(4) of this section, the claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures—

(i) Provide claimants at least 60 days following receipt of a notification of an adverse benefit determination within which to appeal the determination;

(ii) Provide claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits;

(iii) Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. . . . ;

(iv) Provide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

(3) The claims procedures of a group health plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless, in addition to complying with the requirements of paragraphs (h)(2)(ii) through (iv) of this section, the claims procedures -

(i) Provide claimants at least 180 days following receipt of a notification of an adverse benefit determination within which to appeal the determination;

(ii) Provide for a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual;

(iii) Provide that, in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical

> judgment, including determinations with regard to whether a particular treatment, drug, or other item is experimental, investigational, or not medically necessary or appropriate, the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment . . . .

*Id*. at § 2560.503-1(h)(2), (3).

## IV.  LEGAL STANDARD

The Third Circuit has consistently observed that "Rule 23 is designed to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and counsel's ability to fairly and adequately protect class interests." *In re Comm. Bank of N. Va.,* 622 F.3d 275, 291 (3d Cir. 2010) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 799 (3d Cir. 1995) (alterations omitted). Class certification is only appropriate "if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met." *In re Hydrogen Peroxide*, 552 F.3d 305, 309 (3d Cir. 2008) (quotation omitted). Rule 23 contains two sets of requirements. First, a party seeking class certification must demonstrate the class satisfies the requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable [(numerosity)]; (2) there are questions of law or fact common to the classes [(commonality)]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [(typicality)]; and (4) the representative parties will fairly and adequately protect the interests of the class [(adequacy)].

The court will only certify a class when all four requirements are met. *In re Hydrogen Peroxide¸* 552 F.3d at 310. Significantly, a plaintiff carries the burden to "affirmatively demonstrate his compliance" with Rule 23(a). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Additionally, the Court must find by a preponderance of the evidence—not by mere assumption of the facts— that these requirements are met in order to rule in favor of class certification. *In re Hydrogen Peroxide*, 552 F.3d at 320.

13

Moreover, in addition to the Rule 23(a) requirements, class certification is only appropriate if the putative class qualifies under one of the Rule 23(b) subsections. *Id.* at 309. Under Rule 23(b)(1), a class action may be maintained if:

> [P]rosecuting separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudication with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

"Rule 23(b)(1) defines two related types of class actions, both designed to prevent prejudice to the parties arising from multiple potential suits involving the same subject matter." *In re Comp. of Managerial, Prof'l & Tech. Emps. Antitrust Litig.*, No. 02-2924, 2006 WL 38937, at *4 (D.N.J. Jan. 5, 2006) (quotation omitted). Specifically, Rule 23(b)(1)(A) "addresses possible prejudice to the party opposing the class and is intended to eliminate the possibility of separate actions imposing inconsistent courses of conduct on the defendant." *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006). Rule 23(b)(1)(B), however, "addresses possible prejudice to members of the proposed class, and applies if individual actions 'would have the practical if not technical effect of concluding the interests of the other members as well, or of impairing the ability of the others to protect their own interests.'" *Id.* (citation omitted).

Under Rule 23(b)(2), a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Third Circuit has regularly held certification pursuant to Rule 23(b)(2) requires cohesiveness of class claims among the class members. *Barnes v. Am. Tobacco Co.*, 161 F.3d 127,

14

142 (3d Cir. 1998). The Third Circuit articulated the following two reasons for the cohesiveness requirement. "First, unnamed members with valid individual claims are bound by the action without the opportunity to withdraw and may be prejudiced by a negative judgment in the class action." *Id.* at 143. Second, "the suit could become unmanageable and little value would be gained in proceeding as a class action . . . if significant individual issues were to arise consistently." *Id.* In other words, "the court must ensure that significant individual issues do not pervade the entire action because it would be unjust to bind absent class members to a negative decision where the class representative['s] claims present different individual issues than the claims of the absent members present." *Barnes*, 161 F.3d at 143. Therefore, Rule 23(b)(2) is not appropriate where "significant individual liability or defense issues . . . would require separate hearings for each class member in order to establish defendants' liability." *Santiago v. City of Phila.*, 72 F.R.D. 619, 627 (E.D. Pa. 1976).

Furthermore, in deciding whether to certify a class, it "may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Newton v. Merrill Lynch*, 259 F.3d 154, 166 (3d Cir. 1998). Indeed, the Third Circuit has set forth "three key aspects of class certification procedure." *In re Hydrogen Peroxide*, 552 F.3d at 307. First, the court's decision to certify a class requires factual determinations in support of each Rule 23 requirement by a preponderance of the evidence, "not merely a 'threshold showing' by a party." *Id.* "Second, the court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action." *Id.* Lastly, "the court's obligation to consider all relevant evidence and arguments extends to expert testimony, whether offered by a party seeking class certification or by a party opposing it." *Id.*

## V.     *PREMIER HEALTH LITIGATION*

Before the Court addresses Rule 23(b)(1)(A) and (b)(2), a discussion of a relevant district court case, *Premier Health Ctr. v. UnitedHealth Grp.*, Dkt. No. 11-425 (D.N.J.) (the "*Premier Health* Litigation"), is provided to offer context to the Court's Rule 23(b) analysis. Both Plaintiffs and Aetna rely, to an extent, on the facts and legal decisions stemming from the *Premier Health* Litigation throughout their briefs. Although the issues in this case are similar, the Court is not bound by any of the decisions reached in the *Premier Health* Litigation.

In *Premier Health Ctr. v. UnitedHealth Grp.* ("*Premier Health I*"), No. 11-425, 2012 WL 1135608 (D.N.J. Apr. 4, 2012), UnitedHealth Group ("United"), a plan administrator, had issued payment recoupment letters to healthcare providers in an effort to recover alleged overpayments. *Id.* at *1-2. The healthcare provider plaintiffs (the "Premier Plaintiffs") brought an ERISA claim against United, arguing the letters constituted an ABD under ERISA. *Id.* at *2-3. United moved to dismiss the complaint, arguing the Premier Plaintiffs, as healthcare providers, did not have standing to bring an ERISA claim. (*Id.* at *4-5.) However, the court in *Premier Health I* found the Premier Plaintiffs to have derivative standing and denied United's motion. (*Id.* at *8-10, 17.)

Subsequently, the Premier Plaintiffs moved for class certification and United moved for summary judgement. *Premier Health Ctr., v. UnitedHealth Grp.* (*Premier Health II*), 292 F.R.D. 204, 209 (D.N.J. Aug. 1, 2013). The Premier Plaintiffs sought to certify two classes pursuant to Rule 23(b)(1)(A), (b)(2), and (b)(3)—an ERISA Chiropractor Class and an ERISA Recoupment Class—arguing United failed to comply with ERISA's notice and appeal rights requirements when issuing their recoupment letters. *Id.* at 209-10. The Premier Plaintiffs defined the ERISA Recoupment Class as:

> All healthcare providers (such as individual practitioners, durable
> medical equipment providers or facilities)  who, from six years prior

16

> to the filing date of this action to its final termination ("ERISA Class Period"), provided healthcare services to patients insured under healthcare plans governed by ERISA and insured or administered by Defendants, and who, after having received payments from Defendants, were subjected to retroactive requests for repayment of all or a portion of such payments and/or to recoupments or coerced repayments of prior benefits.

*Id.* at 209. The Premier Plaintiffs sought to enjoin United's recoupment procedure, order all recouped funds to be returned to the healthcare provider class, and declare future recoupment efforts to comply with the specific requirements under ERISA for ABDs. *Id.*

The court found the ERISA Recoupment Class satisfied the commonality requirement. *Id.* at 224. Although United's payment recoupment letters varied in detail, the court found a common element, notwithstanding those variations, was that all the recoupment letters violated ERISA's notice requirement. *Id.*

The court in *Premier Health II* explained:

> The content of United's recoupment notification letters does, in fact, vary substantially. The letters in the record provide widely varying levels of detail regarding (1) the basis of the overpayment determination; and (2) the provider's ability to appeal and how to do so. However, they all violate ERISA in three respects. First, they fail to provide "[a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of [ERISA] following an adverse benefit determination on review." 29 C.F.R. § 2560.503-1(g)(1)(iv). Second, they fail to indicate that the provider, "upon request and free of charge, [will have] reasonable access to, and copies of, all documents, records, and other information relevant to the" overpayment determination. 29 C.F.R. § 2560.503-1(h)(2)(ii). Third, they fail to "[p]rovide claimants at least 180 days following receipt of a notification of an adverse benefit determination within which to appeal the determination." 29 C.F.R. § 2560.503-1(h)(3)(i).

*Id.* at *19. The Premier Plaintiffs defined the ERISA Chiropractor Class as:

> All chiropractic physicians who, from six years prior to the filing date of this action to its final termination ("ERISA Class Period"),

17

> provided healthcare services to patients insured under healthcare
> plans governed by ERISA and insured or administered by
> Defendants, and whose claims were subjected to utilization review
> requirements imposed by United and/or Optum.

*Id.* Nevertheless, the court granted United's motion for summary judgment against the ERISA

Chiropractor Class and denied Premier Plaintiffs' motion to certify the ERISA Recoupment Class

for failing to satisfy the Rule 23(a)(3) typicality requirement. *Id.* at 226-30.

Thereafter, in *Premier Health Ctr. v. UnitedHealth Grp.* ("*Premier Health III*"), the

Premier Plaintiffs filed a second amended complaint and a renewed motion for class certification.

No. 11-425, 2014 WL 4271970, at *2 (D.N.J. Aug. 28, 2014). Similar to the claims in *Premier*

*Health I*, the Premier Plaintiffs in *Premier Health III* argued the recoupment letters United issued

to healthcare providers in an effort to recover alleged overpayments constituted an ABD under

ERISA, and therefore must comply with ERISA's notice and appeal requirements. *Id.* at *2.

Notably, all recoupment letters sent out in *Premier Health III* requested a check from healthcare

providers for the amount overpaid. *Id.* at *4.

The Premier Plaintiffs sought to certify a ONET Repayment Demand Class, pursuant to

Rule 23(b)(1)(A) and (b)(2), seeking to enjoin United from continuing its overpayment

recoupment procedure and order United to comply with ERISA's notice and appeal requirements

in future recoupment efforts. *Id.*, at *7, 10. The Premier Plaintiffs defined the ONET Repayment

Demand Class as:

> All ONET healthcare providers (such as individual practitioners,
> durable medical equipment providers or facilities) who, from six
> years prior to the original filing date of this action to its final
> termination ("Class Period"): (1) provided healthcare services or
> supplies to patients insured under healthcare plans governed by
> ERISA and insured or administered by United, and (2) after having
> received benefit payments from United, were subjected to
> retroactive repayment demands for all or a portion of such
> payments. Excluded from this class are all providers who voluntarily

> paid United in response to United's repayment demand or
> affirmatively authorized subsequent recoupments or offsets as a
> means to repay the alleged overpayments.

*Id.* at *2. In *Premier Health III*, the court granted conditional certification of the ONET Repayment

Demand Class pursuant to Rule 23(b)(1)(A) and (b)(2). *Id.* at *28-29.

Unlike in *Premier Health II*, the court in *Premier Health III* granted certification under

Rule 23(b)(2). In *Premier Health II*, the court found the ERISA Recoupment Class failed to satisfy

the requirements for Rule 23(b)(2) because "[t]he ERISA Recoupment Class seeks injunctive relief

based on inadequate notice of and opportunity to appeal [the defendant's] overpayment

determination under ERISA, not a finding that that [sic] [the defendant's] overpayment

determination were themselves arbitrary and capricious." 292 F.R.D. at 228. Thus, the court held

"a single injunction would not provide appropriate relief to each member of the ERISA

Recoupment Class." *Id.*

In *Premier Health III*, the court granted certification because the plaintiff

> cure[d] the defect noted by the [c]ourt in its prior opinion.
> Specifically, requiring [d]efendants to reform their policies,
> procedures and practices, *going forward*, with respect to issuance of
> repayment demands regarding claims processed . . . in accordance
> with ERISA . . . providing ERISA complaint notice of the
> underlying overpayment determination.

*Premier Health III*, 2014 WL 4271970, at *29 (emphasis added).

Notably, *Premier Health III* was conditionally certified. Once the condition was satisfied,

the court, in a subsequent decision, vacated the conditional certification, denied United's motion

for reconsideration of the *Premier Health III* decision, and certified the proposed ONET

Repayment Demand Class without condition. *See Premier Health Ctr., P.C. v. UnitedHealth Grp.*

("*Premier Health IV*"), No. 11-425, 2014 WL 7073439, at *8 (D.N.J., Dec. 15, 2014).

19

## VI.   DECISION

### A.   Rule 23(a) Inquiry

1.   Rule 23(a)(1) – Numerosity

Plaintiffs allege the numerosity requirement is easily satisfied. (ECF No. 241 at 21.) In response, Aetna claims Plaintiffs merely offer speculation about the putative class size. (ECF No. 247 at 34.)

Under Rule 23(a)(1), numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." In seeking to certify a class, enumeration of the class size is not necessary to satisfy the numerosity requirement. *In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 640 (D.N.J. 2004). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (citing 5 James Wm. Moore *et al.*, Moore's Federal Practice § 23.22[3][a] (Matthew Bender 3d ed. 1999)). Plaintiff, however, must present evidence for the court to make a factual determination on whether the Rule 23(a)(1) requirement was met. *In re Hydrogen Peroxide*, 552 F.3d at 307. "[I]n the absence of direct evidence, a plaintiff must show sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition to allow a district court to make a factual finding." *Marcus v. BMW of N. Am., LLC*, 687 F. 3d 583, 596 (3d Cir. 2012).

Here, as to the Provider Flag Class, the Summary of SIU Performance report indicates 492 providers were flagged during the class period. (Leardi Decl., Ex. X (ECF No. 241-25) at 2-3.[11]) Additionally, with respect to the Overpayment Letter Class, Aetna's SIU director, Mari Ellen

---

[11] Also available at Dkt. No. 11-3921, ECF No. 152-25.

Kiefer, testified between 1,800 and 2,400 new investigations are open each year. (Kiefer Dep., Ex. 25 (ECF No. 247-7)[12] at Tr. 300:16-301:11.) Accordingly, the numerosity requirement is satisfied for the Overpayment Letter Class and Provider Flag Class.

### 2. Rule 23(a)(2) – Commonality

Plaintiffs argue several questions of law and fact are common to all class members. (ECF No. 241 at 22-26.) As to the Provider Flag Class, Plaintiffs allege a common issue is "whether the standardized OVERUTIL [sic] EOB complies with ERISA's notice and appeal requirements." (ECF No. 252 at 6 (emphasis omitted).) With respect to the Overpayment Letter Class, Plaintiffs allege two common issues: (1) whether the Overpayment Letters constitute an ABD; and, (2) if so, whether the Overpayment Letters complied with ERISA's notice and appeal requirements. (ECF No. 241 at 24-26.) In response, Aetna argues the OVRUTIL Provider Flag is triggered by several different codes, rather than a single uniform code, and therefore the OVRUTIL Provider Flag is not common among all proposed class members. (ECF No. 247 at 29.) Aetna also argues the determination of whether the Overpayment Letters violated notice and appeal rights under ERISA requires an individualized review of every class member, every letter, and every agreement between the providers and Aetna. (*Id.* at 30-32.)

Under Rule 23(a)(2), commonality is satisfied when "there are questions of law or fact common to the class." The threshold for establishing "[t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 596-97 (3d Cir. 2009) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)). "It is well established that only one question of law or fact in common is necessary to satisfy the commonality requirement, despite

---

[12] Also available at Dkt. No. 11-3921, ECF No. 158-7.

the use of the plural 'questions' in the language of Rule 23(a)(2)." *In re Schering Plough*, 589 F.3d at 97 n.10. Consequently, there is a low threshold for satisfying this requirement. *Newton*, 259 F.3d at 183; *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986).

Moreover, putative class members need not share identical claims, *see Hassine v. Jeffes*, 846 F.2d 169, 176-77 (3d Cir. 1988), and "factual differences among the claims of the putative class members do not defeat certification." *Baby Neal*, 43 F.3d at 56. Rather, to satisfy commonality, a plaintiff must demonstrate the class members suffered the same injury, so that a class action would "generate common answers apt to drive the resolution of the litigation." *Bright v. Asset Acceptance, Inc.*, 292 F.R.D. 190, 201 (D.N.J. 2013) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "Even where individual facts and circumstances do become important to the resolution, class treatment is not precluded." *Baby Neal*, 43 F.3d at 56.

   i.   *Provider Flag Class Satisfies the Commonality Requirement*

Here, Plaintiffs adequately allege a question of law or fact common to the Provider Flag Class. (ECF No. 241 at 22-26.) Specifically, Plaintiffs allege a common issue is whether the denial of claims by the OVRUTIL Provider Flag violates ERISA. (*Id*. at 23-24.). Although Aetna alleges the OVRUTRIL Provider Flag can be triggered through several various denial codes (ECF No. 247 at 29), the argument does not defeat commonality. Regardless of whether the OVRUTRIL Provider Flag was triggered by one denial code, for example, "Denial Code A," or another denial code, "Denial Code B," both denial codes result in the issuance of an EOB, and therefore the resulting OVRUTIL EOB must comply with ERISA's notice and appeal requirements. Thus, the "glue" holding the Provider Flag Class together, including the Par and Nonpar Provider subclasses, is whether the OVRUTIL EOBs comply with ERISA's notice and appeal requirements. Therefore, a common answer to the factual question of whether Aetna's Provider Flags failed to satisfy the

22

minimum procedural requirements under ERISA is sufficient—at least for this low-threshold requirement—to advance the resolution of the entire class. Accordingly, the commonality requirement under Rule 23(a)(2) for the Provider Flag Class is satisfied.

> ii.   *Overpayment Letter Class Satisfies the Commonality Requirement*

Likewise, Plaintiffs adequately allege questions of law and fact common to the Overpayment Letter Class. (ECF No. 241 at 22-26.) Plaintiffs assert two common issues: (1) whether Overpayment Letters constitute an ABD; and, (2) if so, whether the Overpayment Letters comply with ERISA. (*Id.* at 24-26.) Aetna alleges not every Overpayment Letter requests a repayment to constitute an ABD, and therefore not every Overpayment Letter must comply with ERISA. (ECF No. 247 at 31.) This argument does not defeat commonality. Rather, "[f]or purpose of Rule 23(a)(2), even a single common question will do," *Marcus*, 687 F.3d at 597 (citation omitted), and, in this case, the "glue" holding the Overpayment Letter Class together, including Par and Nonpar Provider subclasses, is whether the Overpayment Letters are required to comply with ERISA's notice and appeal requirements. Therefore, a common answer to the factual question of whether Aetna's Overpayment Letters must satisfy the minimum procedural requirements under ERISA is sufficient— at least for this low-threshold requirement—to advance the resolution of the entire class. Accordingly, the commonality requirement under Rule 23(a)(2) for the Overpayment Letter Class is satisfied.

> 3.   Rule 23(a)(3) – Typicality

Plaintiffs argue their claims are typical to those in the respective provider classes because Plaintiffs "were subject to the same procedures for Prepayment Review and post-claim [o]verpayment determinations as other [c]lass members." (ECF No. 241 at 27.) Specifically, Plaintiffs claim the EOBs sent to the named Plaintiffs were the same standardized EOBs sent to

all members in the Provider Flag Class. (*Id.*) Likewise, Plaintiffs argue the Overpayment Letters sent to named Plaintiffs were the same standardized Overpayment Letters sent to all members in the Overpayment Letter Class. (*Id.*) In response, Aetna contends the typicality requirement is not satisfied and posits three arguments: (1) factual circumstances between Plaintiffs and their respective class members vary widely; (2) unique defenses against Plaintiffs are not applicable to their respective class members; and (3) Plaintiffs' interests conflict with the interests of their respective class members. (ECF No. 247 at 32-33.)

Under Rule 23(a)(3), typicality is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The named plaintiff's claims must arise from the same event or practice or course of conduct and must be based on the same legal theory as the claims of the class members. *Brosious v. Children's Place Retail Stores*, 189 F.R.D. 138, 146 (D.N.J. 1999). Despite their similarity, commonality—like numerosity— evaluates the sufficiency of the class itself, whereas typicality—like adequacy of representation— evaluates the sufficiency of the named plaintiff. *See Hassine*, 846 F.2d at 177 n.4; *Weiss v. York Hosp.*, 745 F.2d 786, 810 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060 (1985).

The Third Circuit articulated a three-prong analysis in assessing the typicality requirement, consisting of three distinct, yet relevant, concerns:

> (1) the claims of the class representatives must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory;
>
> (2) the class representatives must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and
>
> (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*Marcus*, 687 F. 3d at 598 (quoting *In re Schering Plough Corp.*, 589 F.3d at 598-99). In other words, the named plaintiff is required to be "sufficiently similar" to the class "in terms of their legal claims, factual circumstances, and stake in the litigation." *In re Schering Plough Corp.*, 589 F.3d at 597. Typicality bars certification only when "the legal theories of the named representatives potentially conflict with those of the absentees." *Georgine v. Amchem Prods.*, 83 F.3d 610, 631 (3d Cir. 1996); *Newton*, 259 F.3d at 183. "It is well-established that a proposed class representative is not 'typical' under Rule 23(a) if 'the representative is subject to a unique defense that is likely to become a major focus of the litigation.'" *In re Schering Plough*, 589 F.3d at 598 (quoting *Beck*, 457 F.3d at 301). Therefore, "the challenge presented by a defense unique to a class representative [is that] the representative's interests might not be aligned with those of the class, and the representative might devote time and effort to the defense at the expense of issues that are common and controlling for the class." *Beck*, 457 F.3d at 297.

The Court has thoroughly reviewed the parties' arguments and finds Plaintiffs face several hurdles in demonstrating typicality, including but not limited to whether the factual circumstances are common among Plaintiffs and putative class members, and whether typicality is satisfied within the Par Provider and Nonpar Provider Subclasses based on statutory derivative standing. Regardless, the Court need not render a decision on this element because certification is denied on other dispositive grounds.

### 4.    Rule 23(a)(4) – Adequacy

Plaintiffs argue "proposed class counsel consists of experienced class action attorneys." (ECF No. 241 at 28.) Plaintiffs also argue their "interests . . . are fully aligned with those of the proposed class." (*Id.*) Aetna, on the other hand, does not contest the adequacy of Plaintiffs'

counsel, but raises significant concerns regarding the adequacy and credibility of various named Plaintiffs. (ECF No. 247 at 33-34.)

Under Rule 23(a)(4), a class may not be certified unless the representative class members "will fairly and adequately protect the interests of the class." "Rule 23(a)'s adequacy of representation requirement 'serves to uncover conflicts of interest between named parties and the class they seek to represent.'" *In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333, 343 (3d Cir. 2010) (quoting *Amchem*, 521 U.S. at 625). Class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* (citation omitted).

This requirement has traditionally entailed a two-pronged inquiry: first, the named plaintiff's interests must be sufficiently aligned with the interests of the absentees; and second, the plaintiff's counsel must be qualified to represent the class. *Gen. Motors*, 55 F.3d at 800. A named plaintiff is "adequate" if his interests do not conflict with those of the class. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998). Pursuant to Rule 23(g), adequacy of class counsel is considered separately from the determination of the adequacy of the class representatives.

Aetna raises significant concerns of proposed class representative, ANJC Plaintiff Miliano. (ECF No. 247 at 34.) During a deposition testimony, Miliano stated he is not "carrying a flag, I'm not initiating any crusade against any carrier whatsoever." (Miliano Dep., Ex. 17 (ECF No. 247-7) at Tr. 146:6-147:10.[13]) *See McFarland v. Yegen*, No. 88-4797, 1989 U.S. Dist. LEXIS 16965, at *28 (D.N.J. Oct. 6, 1989) (finding the plaintiffs have not satisfied Rule 23(a)(4) because "there is no assurance that the named plaintiff will vigorously litigate the threshold issues"). While the

---

[13] Also available at Dkt. No. 11-3921, ECF No. 158-7.

Court is not persuaded Miliano will adequately protect the interests of the class, it need not reach a decision at this time, as certification is denied on other grounds.

Further, Aetna references alleged provider misconduct by several named Plaintiffs, arguing Plaintiffs' questionable credibility fails to meet the adequacy requirement. (ECF No. 247 at 34.) "To deny certification, a court need not conclude that credibility problems would ultimately defeat the class representative's claim; rather, the court may deny class treatment if that unique defense is even arguably present." *Coyle v. Hornell Brewing Co.*, No. 08-2797, 2011 WL 3859731, at *3 (D.N.J. Aug. 30, 2011) (citing *Karnuth v. Rodale, Inc.*, No. 03-742, 2005 WL 747251, at *3 (E.D. Pa. Mar. 30, 2005)). While the Court is cognizant of Plaintiff's objections to Aetna's provider misconduct argument, the Court need not reach a decision at this time, because certification is denied on other grounds.

### B.       Rule 23(b)(1)(A) Requirements

Plaintiffs seek to certify the two proposed classes under Rule 23(b)(1)(A). (ECF No. 241 at 28.) Plaintiffs argue, without class treatment, "there is a real possibility of 'inconsistent or varying adjudication' regarding Aetna's uniform practices." (*Id.* at 30.) Specifically, Plaintiffs allege duplicative lawsuits would risk inconsistent or varying adjudications on whether Aetna's OVRUTIL EOBs and Overpayment Letters comply with ERISA's notice requirement. (ECF No. 252 at 16.) In response, Aetna argues there is no uniform policy governing its conduct, and the several individualized issues in Plaintiffs' claims preclude certification under Rule 23(b)(1)(A). (ECF No. 247 at 35.)

Under Rule 23(b)(1)(A), a class qualifies for certification if "inconsistent or varying adjudications with respect to individual class members [] would establish incompatible standards of conduct for the party opposing the class." "Rule 23(b)(1)(A) 'takes in cases where the party is

obligated by law to treat the members of the class alike . . . or where the party must treat all alike a matter of practical necessity . . . .'" *Amchem Prods.*, 521 U.S. at 614 (citation omitted). Certification is justified when "individual adjudication would be impossible or unworkable." *Dukes*, 564 U.S. at 362.

Moreover, Rule 23(b)(1)(A) "addresses possible prejudice to the party opposing the class and is intended to eliminate the possibility of separate actions imposing inconsistent courses of conduct on the defendant." *Beck*, 457 F.3d at 301. To certify a class under Rule 23(b)(1)(A), the Court must determine whether varying adjudications of duplicative lawsuits would establish incompatible standards. *In re Merck & Co.*, No. 05-1151, 2009 WL 331426, at *11 (D.N.J. Feb. 10, 2009) (finding Rule 23(b)(1)(A) "only requires that varying adjudication would establish incompatible standards"). Incompatible standards of conduct refer to "the situation in which different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct." *Wright, Miller, Kane, et al.*, 7AA Fed. Prac. & Proc. Civ. § 1773 (3d ed.).

Here, class certification pursuant to Rule 23(b)(1)(A) is not suitable for either the Provider Flag Class or the Overpayment Letter Class, because Plaintiffs have not met their "burden to show that the prosecution of separate actions would create a risk of multiple actions that would establish incompatible standards of conduct or that the denial of class certification would substantially impair or impede the ability of other putative class members to protect their interests." *Parsons v. Phila. Parking Auth.*, Civ. A. No. 13-0955, 2016 WL 538215, at *2 (E.D. Pa. Feb. 11, 2016); *see Byrd*, 784 F.3d at 163 ("[T]he party proposing class-action certification bears the burden of affirmatively demonstrating by a preponderance of the evidence her compliance with the requirements of Rule 23."). Class certification is only appropriate where "individual adjudication

would be impossible or unworkable," and the Court is not faced with that situation here. *Dukes*, 564 U.S. at 362. Individual adjudication in this case is not only possible and workable, but required. The Court addresses each class in turn.

        1.     <u>The Provider Flag Class Fails to Satisfy the Rule 23(b)(1)(A) Requirements</u>

In support of class certification, Plaintiffs rely on *Premier Health III*, where certification pursuant to Rule 23(b)(1)(A) was granted. 2014 WL 4271970, at *29. However, Plaintiffs' reliance on *Premier Health III* to certify the Provider Flag Class under Rule 23(b)(1)(A) is misplaced because the facts are distinguishable.

Under ERISA, an ABD means "[a]ny of the following: a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit." 29 C.F.R. § 2560.503-1(m)(4). In granting certification, the court in *Premier Health III* explained:

> [The] central issue surrounding these claims is whether any overpayment determination whatsoever regarding services performed on an out of network basis constitutes an ABD under ERISA, thereby requiring that any and all of United's repayment demands comply with ERISA's notice and appeal regulations. As a result, individual actions could very well result in divergent ruling on this issue that would, in turn, impair United's ability to pursue uniform policies and practices regarding overpayment notifications.

*Premier Health III*, 2014 WL 4271970, at *28. In other words, the concern in *Premier Health III* was whether one court would find "that any and all repayment demands constitute ABDs under ERISA and therefore must comply with ERISA's notice and appeal requirements," whereas another court would find "that certain repayment demands issued to the provider . . . are not ABDs, and therefore do not need to comply with ERISA." *Id*. at *28-29.

Here, the key distinction is that Aetna's OVRUTIL EOB undoubtedly constitutes an ABD, and it is unlikely a court would find otherwise. Aetna sends the OVRUTIL EOBs only after a claim is denied. Aetna concedes: "When Aetna adjudicates any claim . . . it sends an EOB to the provider

and member. The EOB identifies any amount paid, [and] the reason for any reduction or denial[.]"
(ECF No. 247 at 12.) Thus, separate lawsuits would not result in varying determinations because
Aetna's OVRUTIL EOBs are ABDs, and therefore must comply with ERISA's notice
requirements. To the extent Plaintiffs argue a single action is necessary to prevent the risk of
inconsistent adjudications, multiple lawsuits and judgments will not change the governing
standard—compliance with ERISA requirements. Because the Provider Flag and resulting
OVRUTIL EOB constitute an ABD, it is unlikely one court will require Aetna to comply with
ERISA's notice requirements, while another court allows Aetna to violate ERISA. Accordingly,
Plaintiffs' Motion to Certify the Provider Flag Class under a Rule 23(b)(1)(A) is **DENIED**.

2. The Overpayment Letter Class Fails to Satisfy the Rule 23(b)(1)(A) Requirements

Plaintiffs seek to enjoin Aetna from sending Overpayment Letters that fail to comply with
ERISA's notice and appeal requirements. (ECF No. 241 at 18.) To certify the Overpayment Letter
Class under Rule 23(b)(1)(A), Plaintiffs argue certification is justified because multiple lawsuits
would risk inconsistent or varying adjudications regarding Aetna's Overpayment Letters. (ECF
No. 252 at 16.) However, the relevant Rule 23(b)(1)(A) inquiry does not hinge solely on the risk
of varying adjudications, but instead on whether varying adjudications would result in
incompatible standards of conduct a defendant. *See Bennet v. Corr. Med. Servs.*, No. 02-4993,
2008 WL 2064202, at *14 (D.N.J. May 14, 2008) ("The fact that some plaintiffs may be successful
in their suits against a defendant while others may not is clearly not a ground for invoking Rule
23(b)(1)(A)." (citation omitted)).

Plaintiffs have not met their burden in demonstrating class certification is appropriate under
Rule 23(b)(1)(A), and the Court does not agree multiple lawsuits would result in inconsistent

adjudications. While some Plaintiffs may be unsuccessful in their suits, this is not a ground for invoking Rule 23(b)(1)(A). *Bennet*, 2008 WL 2064202, at *14.

Again, *Premier Health III* is factually distinguishable. In that case, the Premier Plaintiffs argued the recoupment letters constituted an ABD under ERISA. *Premier Health III*, 2014 WL 4271970, at *2. All recoupment letters at issue in *Premier Health III* requested a check from healthcare providers for the amount overpaid, and separate adjudications could have resulted in inconsistent judgments on substantially similar recoupment letters. *Id.*, at *4. Here, the record demonstrates each Overpayment Letter was customized and not every Overpayment Letter requested payment. (ECF No. 247 at 7-11.) *See, infra*, text at 38-39. Therefore, a court would need to investigate the content of the specific Overpayment Letter sent to each class member, in addition to the Discrepancy Letter and underlying facts of each class member's claim, to determine whether an ABD was made. If an ABD exists, Aetna must comply with ERISA; multiple lawsuits or judgments will not change that governing standard.

For these reasons, Plaintiffs' Motion to Certify the Overpayment Letter Class under a Rule 23(b)(1)(A) is **DENIED**.

### C.    Rule 23(b)(2) Requirements

As to Rule 23(b)(2), Plaintiffs argue Aetna's policies and procedures relating to OVRUTIL EOBs and Overpayment Letters are uniform and warrant class certifications for the proposed classes. (ECF No. 241 at 30.) Specifically, Plaintiffs seek "process relief, i.e., an injunction requiring Aetna to modify its OVERUTIL [sic] EOBs and Overpayment Letters to comply with ERISA." (ECF No. 252 at 17.) In response, Aetna posits two arguments: (1) injunctive relief would not impact the proposed classes in the same way; and (2) the proposed classes are not cohesive. (ECF No. 247 at 36-39.) Specifically, Aetna argues individualized issues in the OVRUTIL EOBs

and Overpayment Letters would impact class members differently. (*Id.* at 37.) Additionally, Aetna argues the putative classes lack cohesiveness because Plaintiffs disagree over the particular practice they challenge and remedy they seek. (*Id*. at 38.)

Under Rule 23(b)(2), the Court must find "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The Supreme Court has held the "key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted— the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 374. In other words, certifying a Rule 23(b)(2) class "applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* at 360. Thus, "[c]laims for individualized relief may not be certified under 23(b)(2), nor may claims for monetary relief that are 'not incidental to the injunctive or declaratory relief.'" *Lipstein v. UnitedHealth Grp.*, 296 F.R.D. 279, 291 (D.N.J. 2013) (quoting *Dukes,* 564 U.S. at 360).

Additionally, under Rule 23(b)(2), a plaintiff must show the class claims are cohesive among the class members. *See Gates v. Rohm & Haas Co.*, 665 F.3d 255, 263-64 (3d Cir. 2011). Cohesiveness is a primary requirement "because in a (b)(2) action, unnamed members are bound by the action without the opportunity to opt out." *Barnes*, 161 F.3d at 142-43. Certification under Rule 23(b)(2) is not appropriate when "disparate factual circumstances of class members" fail to meet the cohesiveness requirement. *Id.* at 265 (citing *Carter v. Butz*, 479 F.2d 1084, 1089 (3d Cir. 1973). "Accordingly, our Circuit has held that district courts have the discretion to deny certification under (b)(2) when a given case presents 'disparate factual circumstances,' or a

prevalence of individualized issues." *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, No. 03-4558, 2012 WL 379944, at *38 (D.N.J. Feb. 6, 2012) (quoting *Barnes*, 161 F.3d at 143).

Here, Plaintiffs' overarching claim in the proposed classes is Aetna failed to comply with ERISA's procedural notice and appeal requirements. (ECF No. 252 at 1, 6.) With respect to Plaintiffs' request for prior claim denials and overpayment determinations to be remanded to Aetna, albeit without challenging the denial, "so that the affected plan Members—or their lawful assignees—may receive the benefit of a full and fair review" (ECF No. 241 at 18), Aetna argues Plaintiffs claim for relief would require reopening closed files to pursue claims that have already been resolved. (*Id.* at 11, 33, 37.)

The Court finds a single injunction would not provide relief to each member of the proposed class. *See Dukes*, 564 U.S. at 374. Because Plaintiffs assert their request for remand under Section 502(a)(1)(B), "[P]laintiffs retain[] the burden to prove that [they are] entitled to benefits, and that the plan administrator's decision was arbitrary and capricious." *Lima v. Aetna Life Ins. Co.*, No. 12-7770, 2013 WL 6903946, at *6 (D.N.J. Dec. 31, 2013). "Arbitrary and capricious" means that "the administrator terminated the claimant's benefits unlawfully." *Miller*, 632 F.3d at 856-57. In *Premier Health II*, the court denied the remand remedy because the class sought "injunctive relief based on inadequate notice of and opportunity to appeal [the defendant's] overpayment determination under ERISA, not a finding that [the defendant's] overpayment determination were themselves arbitrary and capricious." 292 F.R.D. at 228. Likewise, Plaintiffs seek injunctive relief and "do not ask this Court to determine the underlying merits of each and every benefit denial caused by an Overpayment Letter." (ECF No. 241 at 18.) Instead, Plaintiffs argue their claims are "about process, not the merits of individual overpayment disputes." (ECF No. 252 at 20 (emphasis omitted).) However, remanding previously recovered benefits that Aetna

allegedly overpaid would amount to effecting equitable relief without Plaintiffs establishing their "right to benefits that is legally enforceable against the plan." *Fleisher*, 679 F.3d at 120. Because equitable restitution is only appropriate "where money . . . belong[s] in good conscience to the plaintiff," *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002), and Plaintiffs here do not dispute the merits of the claim determinations or overpayment decision, remanding previously denied claims would not be a proper remedy in this case. Accordingly, any injunctive relief afforded may only enjoin Aetna's actions going forward, rather than remanding previously denied claims.

Further, the Court finds Plaintiffs have not demonstrated the class is cohesive. Plaintiffs argue the proposed classes are cohesive because "all class members experienced the same deprivation of ERISA notice and appeal rights relevant to the issues to be certified." (*Id.* at 18.) However, Plaintiffs' claims raise several individualized issues that lack cohesiveness among class members and prevent this Court from finding Aetna "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Court will examine each class in turn.

1.    The Provider Flag Class Fails to Satisfy the Rule 23(b)(2) Requirements

Plaintiffs seek to certify a Provider Flag Class of all providers harmed by Aetna's OVRUTIL Flag and rely on the OVRUTIL EOB in support. (ECF No. 241 at 19, 24.) They argue the underlying dispute is whether "the resulting EOBs [Aetna] sends to providers are detailed enough to satisfy the specificity requirements of the ERISA Claims Regulation." (*Id.*) Plaintiff oversimplifies the issues. A single injunction would not provide class-wide relief because the

Court would require an individualized, plan-by-plan determination to establish whether the OVRUTIL EOBs violated ERISA's notice requirement.

Aetna issued EOBs along with an "explanatory letter" to healthcare providers, detailing additional information about claim denials. (Urschel Dep., Ex. 28 (ECF No. 247-8) at Tr. 94:1-18.) Because Plaintiffs in the Provider Flag Class dispute the ABD made at Pre-payment Review, the two applicable ERISA provisions are 29 C.F.R. §§ 2560.503-1(g) and 2560.503-1(h), governing notice and appeals requirements for benefit determinations, respectively.

Here, the explanatory letters provided in conjunction with the EOBs at issue differ from the letters in the *Premier Health* Litigation on which Plaintiffs rely. For example, two explanatory letters provided to the same provider for two different claim denials not only varied in language and detail, but also in ERISA compliance. One explanatory letter ("Letter A") read: "A copy of the specific rules, guideline or protocol relied upon in the adverse benefit determination will be provided free of charge upon request by you or your authorized representative." (Explanatory Letter to Milione I, Ex. 48, (ECF No. 247-10) at 67.[14]) This language satisfied the ERISA notice requirement under Section 2560.503-1(h)(2)(ii), requiring a statement that the claimant "upon request and free of charge, [will have] reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." *See also* 29 U.S.C. § 2560.503-1(h)(2)(iii) (requiring "that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits"). With respect to appeal rights, the letter further provided: "If you disagree with this decision, you may request an appeal. Please forward your request for appeal . . . within 60 days and receipt of this letter. You will receive a determination within 30 business days."

---

[14] Also available at Dkt. No. 11-3921, ECF No. 158-10.

(Ex. 48 (ECF No. 247-10) at 67.) This satisfied part of the ERISA appeal provision requiring "at least 60 days following receipt of a notification of an adverse benefit determination within which to appeal the determination." 29 U.S.C. § 2560.503-1(h)(2)(i). However, Letter A does not include "a statement of the claimant's right to bring an action under Section 502(a)" as required by ERISA. 29 U.S.C. § 2560.503-1(g)(1)(iv). Nevertheless, in a different explanatory letter ("Letter B") sent to the same provider as Letter A, not only were the provisions discussed above satisfied, but Letter B also included the statement required by Section 2560.503-1(g)(1)(iv), reading: "If you do not agree with the final decision you have the right to bring a civil action under Section 502(a) of ERISA, if applicable." (Explanatory Letter to Miliano II, Ex. 58, (ECF No. 247-11)[15] at 21-24.)

Moreover, not only does ERISA require "[t]he specific reason or reasons for the adverse determination" be provided, but it also requires "[r]eferences to the specific plan provisions on which the benefit determination is based." 29 U.S.C. § 2560.503-1(g)(1), (2). Because the explanatory letters accompanying the OVRUTIL EOB vary in language and detail, the Court must scrutinize each explanatory letter to determine whether the requisite information was sufficiently provided. By way of example, another explanatory letter ("Letter C"), issued to a different provider, varied extensively in detail, specifying Aetna's methodology and policies for services.[16]

---

[15] Also available at Dkt. No. 11-3921, ECF No. 158-11.

[16] Specifically, Letter C explains: "Aetna considers surface scanning [EMG] . . . as a diagnostic test for evaluating low back pain . . . because the reliability and validity of these test have not been established. Therefore, the medical necessity for this testing is not supported." (*Id.*, Ex. 70 (ECF No. 247-11) at 63.) Letter C also included a greater level of specificity for the ABD, reading: "Neuromusclar reeducation is a therapeutic procedure provided to improve balance . . . to a person who has muscle paralysis . . . . The submitted documentation did not support the member as having a muscle paralysis which would not meet Aetna policy for these services." Whereas Letter A only stated, "The submitted information does not include the initial evaluation or documentation to support the medical necessity for these procedures," Letter C articulated several bullet points detailing the plan's review procedures and why the claim was denied. (Ex. 48, ECF No. 247-10 at 66; *Id.*, Ex. 70 (ECF No. 247-11) at 65-66.)

(Explanatory Letter to Restivo, Ex. 70, (ECF No. 247-11) at 65-66.)  Letter A, however, merely offered a general reason for the ABD, reading: "The submitted information does not include the initial evaluation or documentation to support the medical necessity for these procedures." (Ex. 48, ECF No. 247-10 at 67.) Further, the level of specificity for the ABD in a fourth explanatory letter ("Letter D"), provides less detailed than Letter C, but more detailed than Letter A, reading: "The documentation submitted for review did not contain a treatment plan that includes specific statements of measurable short/long term goals with reasonable estimates of when those goals will be reached. Additionally, Intersegmental traction is considered investigational and experimental by Aetna." (Explanatory Letter to Vincent, Ex. 136, (ECF No. 247-15)[17] at 4-5.)

Unlike the letters in *Premier Health II*, which, while varying considerably in language and detail, all violated ERISA, the letters in this case vary in language, detail, *and* compliance. Specifically, the proposed class, as defined, includes providers in receipt of compliant and non-compliant letters. Because these letters vary from provider to provider, a determination regarding compliance with ERISA would require the Court to delve into each explanatory letter to determine whether Aetna violated ERISA's notice and appeal requirements.

Moreover, because the letters do not uniformly violate ERISA, the factfinder ultimately must consider whether the level of detail provided in each explanatory letter, in Letter C for example, sufficiently satisfies the several ERISA notice and appeal requirements under 29 C.F.R. § 2560.503-1(h) and 29 C.F.R. § 2560.503-1(g). Consequently, cohesiveness among the class members fails because some members received ERISA-compliant notices, while others did not, and therefore the Court is required to examine whether each notice complied with ERISA. *See Barnes*, 161 F.3d at 143 ("[T]he suit could become unmanageable and little value would be gained

---

[17] Also available at Dkt. No. 11-3921, ECF No. 158-15.

in proceeding as a class action . . . if significant individual issues were to arise consistently." (citation omitted)); *Agostino*, 256 F.R.D. at 471 (denying class certification under Rule 23(b)(2) because there were too many individualized issues of facts for the class to be considered cohesive); *see Gates*, 655 F.3d at 265 (denying Rule 23(b)(2) certification where individualized issues of members' "characteristics and medical histories" made certification inappropriate). Accordingly, Plaintiffs' Motion to Certify the Provider Flag Class under Rule 23(b)(2) is **DENIED.**

        2.    <u>The Overpayment Letter Class Fails to Satisfy the Rule 23(b)(2)</u> <u>Requirements</u>

Plaintiffs seek to certify an Overpayment Letter Class of all providers harmed by Aetna's SIU Overpayment Letters. (ECF No. 241 at 20.) As common evidence, Plaintiffs reference "Aetna's policies and procedures for making an Overpayment determination and sending Overpayment Letters." (*Id*. at 25.) As with commonality, Plaintiffs allege the underlying dispute is whether those letters comply with ERISA's notice and appeal requirements. (*Id.* at 17, 26; ECF No. 252 at 11.) However, to determine whether Aetna's Overpayment Letters violated ERISA's notice and appeal requirements, a plan-by-plan review of several individualized issues would be required. For reasons similar to the Provider Flag Class, a single injunction would not provide class-wide relief.

Under ERISA, an "adverse benefit determination means any of the following: a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit." 29 C.F.R. § 2560.503-1(m)(4). When an ABD is made, a plan administrator is required to provide the plan's members or beneficiaries with certain rights, including: (1) adequate notice of the ADB; (2) the appeal rights of the ABD; and (3) a full and fair review of the appeal. *Id.* at § 503-1(g)-(h). Thus, any and all repayment demands constitute an ABD under ERISA, and

therefore must comply with ERISA's notice and appeal requirements. *Premier Health II*, 2014 WL 120589, at *87.  However, not every Overpayment Letter makes a demand for payment.

First, Overpayment Letters sent to three ANJC Plaintiffs, Vincent, Manz, and Shirley, notified the providers of an identified overpayment and made a demand for repayment. (Defs.' Br., Ex. 10 (ECF No. 247-6) at 42.) For example, Vincent's Overpayment Letter read: "Please remit a check in the amount of $8,879.96 made payable to Aetna Life Insurance Company and mail to our office in the enclosed envelope no later than August 3, 2007." (*Id.*) However, Overpayment Letters sent to two other ANJC Plaintiffs, Carnucci and Restivo, merely notified the provider of an identified overpayment, without making a demand for repayment. (*Id.* at 7.) For example, Carnucci's Overpayment Letter read: "After . . .  Dr. Carnucci ha[s] had an opportunity to review Aetna's findings, it may be helpful for the parties to meet to review the records and findings together. Please let me know if you are interested in doing so." The Overpayment Letter sent to Carnucci, unlike the one sent to Vincent, did not explicitly demand repayment.

In *Premier Health III*, the letters sent out all requested a check from the providers for the amount overpaid. 2014 WL 120589, at *4. Here, not all Overpayment Letters demanded repayment. (ECF No. 247 at 31.) Plaintiffs acknowledge not all letters demand payment and refer to those letters as the Discrepancy Letters, rather than Overpayment Letters. (ECF No. 241 at 11.) To establish whether the Overpayment Letters must comply with ERISA's notice requirements, the Court must first determine whether the Overpayment Letters constitute an ABD. If some Overpayment Letters affirmatively demand repayment, while others merely notify providers of an overpayment, the class would bear varying ABDs based on which letter the class member received. Therefore, single injunction would not provide class-wide relief because an individualized determination would be required to establish the Overpayment Letter made a request for payment

39

before determining whether the letter constituted an ABD, and thus, must comply with ERISA. *See In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, No. 03-4558, 2012 WL 379944, at *38 (D.N.J. Feb. 6, 2012) ("[O]ur Circuit has held that district court have the discretion to deny certification under (b)(2) when a given case presents 'disparate factual circumstances' or a prevalence of individualized issues." (quoting *Barnes*, 161 F.3d at 143)). Indeed, "any injunction that might be issued could be limited to the characteristics of the parties in the particular lawsuit." *In re Comp. of Managerial, Prof'l & Tech. Emps. Antitrust Litig.*, 2006 WL 38937, at *4. Because not every Overpayment Letter makes a demand for payment, the claims among class members cannot be cohesive, and therefore, the class does not satisfy the Rule 23(b)(2) requirements for certification. Accordingly, Plaintiffs' Motion to Certify the Overpayment Letter Class under Rule 23(b)(2) is **DENIED.**

## VII.   CONCLUSION

Having conduct the required rigorous analysis, the Court is not satisfied the prerequisites of Rule 23 are met. *In re Hydrogen Peroxide*, 552 F.3d at 309. Therefore, for the reasons set forth above, Plaintiffs' Motion to Certify a Class (ECF No. 241) is **DENIED**. An appropriate Order will follow.

**Date:** March 29, 2018                    */s/ Brian R. Martinotti*
                                           **HON. BRIAN R. MARTINOTTI**
                                           **UNITED STATES DISTRICT JUDGE**